FRANK RONGO, AN INFANT, WHO SUES BY HIS NEXT FRIEND, JOSEPHINE RONGO, PETITIONER-DEFENDANT, v. R. WADDINGTON & SONS, INCORPORATED, RESPONDENT-DEFENDANT, AND EDMUND D. VANDERBILT, FORMERLY DOING BUSINESS UNDER THE FIRM NAME OF E. D. VANDERBILT & COMPANY, RESPONDENT-PROSECUTOR.

Submitted March 18, 1915—Decided June 14, 1915.

The petitioner was hired and paid by W., who were contracting teamsters. They had a contract with V. to haul sand, &c., for him at a fixed price per day, which included the services of driver, horse and wagon. Petitioner was paid by and assigned to work by W. each morning, although V. could object to any driver, and when such objections were made such driver would not be put upon V.'s work. When petitioner was assigned by W. to V.'s work he did whatever V. told him to do. While so engaged petitioner was injured. *Held*, that W. was the employer of petitioner under the meaning of the word "employer" in the Workmen's Compensation act.

On *certiorari*.

Before Justices SWAYZE, PARKER and KALISCH.

For the petitioner-defendant, *Horace L. Allen.*

For the respondent-defendant, *Edwards & Smith.*

For the respondent-prosecutor, *Collins & Corbin.*

The opinion of the court was delivered by

PARKER, J.   This is a rather unusual workmen's compensation case, the question at issue being who, under the peculiar circumstances, was the employer of the injured employe in the intendment of the statute.

The petitioner was originally employed by and regularly worked for the defendants, Waddington, and was regularly paid his wages by them, as driver of a cart.   Waddington & Sons were contracting teamsters, having a number of wagons and horses, and in the business of letting out their teams with drivers to such persons as had need of them.   They had a contract with the respondent Vanderbilt to haul sand and other building material for him at a fixed price per team per day, which price included the services of wagon, horses and driver.   It appears that while Vanderbilt did not directly employ or pay the drivers, he could, in case he objected to any driver, state his objection to the Waddingtons and they would not put that driver on Vanderbilt's work after such objection.   There were several teams of the Waddingtons working on the Vanderbilt job.   Petitioner, Rongo, appeared to be satisfactory to Vanderbilt, for he had worked a week or ten days on the Vanderbilt job before he was hurt.   At the same time he had no financial relations with Vanderbilt; he reported at the Waddington office every morning, and only when he had reported and was told to do so did he go to Vanderbilt; but when he arrived there he would do whatever work appropriate for a team Vanderbilt required to be done.   While engaged in taking on a load of sand or stone which was being dumped into his wagon by a steam shovel the petitioner's hand was caught in the jaws of the shovel and injured.

At the trial the controversy was whether the award should be made against Vanderbilt or against the Waddingtons, and

the trial judge held that petitioner was servant *pro hac vice* of Vanderbilt, and, consequently, directed judgment to be entered against Vanderbilt and in favor of Waddington.

Of course, the determination of this question must depend upon the true meaning of the Workmen's Compensation act. If this were a case of master and servant at common law, where the liability hangs on questions of negligence and assumption of risk, and the doctrine of fellow-servant, there is ample authority for sustaining the finding of the trial judge as a finding of fact. In this aspect it is sufficient to cite the leading cases in this state of *Ewan* v. *Lippincott,* 47 *N. J. L.* 192, and *Hardy* v. *Delaware, Lackawanna and Western Railroad Co.,* 57 *Id.* 505; 59 *Id.* 35. In the case at bar, however, we are concerned with the meaning of the statute which undertakes by the implied assent of the parties to create a contract on the part of the employer to compensate his employe in a specific way and to a specified amount for injury or death arising out of or in the course of the employment. We must, therefore, look to the statute to ascertain who is intended by the word "employer" and who by the word "employe." Manifestly, the two terms are complementary, and the meaning of either is ascertainable, at least, in part, from that of the other. The statute says *(Pamph. L.* 1913, *p.* 23, § 3, *ch.* 174) : "Employer is declared to be synonymous with master and includes natural persons, partnerships and corporations; employe is synonymous with servant and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments." This, however, throws but little light on the question under consideration; but when we examine the provisions of paragraphs 7, 8, 9 and 10, under section 2 of the act, we think the meaning of the act is made plain. Paragraph 7 begins as follows: "When employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of section 2 of this act," compensation shall be made, &c. Paragraph 8 begins: "Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination

thereof than as provided in section 2," &c.   Paragraph 9 says, in part:  "Every contract of hiring made subsequent to the time provided for this act to take effect shall be presumed to have been made with reference to the provisions of section 2 of this act * * *.  * * *  In the employment of minors, section 2 shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor."   Paragraph 10 is as follows:  "The contract for the operation of the provisions of section 2 of this act may be terminated by either party upon sixty days' notice, in writing, prior to any accident."

We think it would be an unreasonable strain upon this language to hold that it is applicable to any relation of master and servant, as generally understood at the common law, other than that arising out of a contract between the master and the servant whereby the servant engages to work for the master, and the master on his part engages to pay the servant for such work; in other words, that it is inapplicable to a condition of things where a servant employed by a master directly is required as part of his contract of employment to work for some other person for a compensation payable not to the servant but to the immediate master.   This must be gathered from the language of paragraph 23, where it says:  "Employe * * * includes all natural persons who perform services for another for financial consideration."   In the case at bar the financial consideration moving to the injured employe was the wages that he was paid by Waddington, and, consequently, Waddington was the "other" that was his employer in the intendment of the act.

We conclude, therefore, that it was an error on the part of the trial court to hold Vanderbilt as the employer.   Vanderbilt had no direct dealings with the petitioner; he had nothing to say on the question how much wages petitioner should be paid; the only contract that he made was a contract with Waddington for the supply of a team, consisting of a wagon, horses and driver, for which he paid as a team.   There was, of course, ample evidence to justify an award as against Waddington, and this is what we think the court ought to have. done.

The judgment will therefore be reversed and the case remanded for further proceedings in accordance with these views.