New Jersey Department of Labor,
Workmen's Compensation Bureau.

JAMES O. WOOD, PETITIONER, v. MARKET-ARLINGTON COMPANY, INCORPORATED, BRANFORD-ARLINGTON GARAGE AND THOMAS COLEMAN, RESPONDENTS.

Decided February 19, 1937.

For the petitioner, *Charles Becker.*

For the respondents, *Francis A. Kenneally.*

\*          \*          \*          \*          \*          \*          \*

It appears from the undisputed evidence that James O. Wood, hereinafter referred to as petitioner, met with an accident on January 7th, 1936, at the Branford and Arlington Garage, which was owned and operated by the Market-Arlington Company, Incorporated. The accident occurred while he was changing a tire on the automobile of a customer who had just made purchase of gasoline, and upon using a lift jack which was faulty and defective, the ratchet slipped, causing the handle to strike petitioner forcibly against his chest, throwing him backward and injuring his head and left leg. Petitioner was taken by ambulance to St. Barnabas Hospital where he was confined as a patient for three weeks, and thereafter was treated as an out-patient at the clinic until July, 1936.

The point of controversy is as to petitioner's status at the time of the accident; that is, whether he was in the employ of the Market-Arlington Company, Incorporated, or Thomas Coleman.

The facts developed in the evidence along this line indicate that during the month of December, 1935, finding it impracticable to do repair work itself and maintain its own repair

department, the Market-Arlington Company, Incorporated, entered into a contract with one, Thomas Coleman, an expert auto mechanic, by the terms of which Coleman was to operate this department, furnishing his own equipment, parts and labor on forty per cent.-sixty per cent. basis. There seems to be no question but that Coleman conducted the same as his own independent business, having expended large sums of money in furnishing the repair department with necessary tools and equipment, and at times employing mechanics to assist him. It appears that during the latter part of December, 1935, petitioner was hired in a dual capacity, that is, as an extra car washer and garageman's helper by the Market-Arlington Company, Incorporated, and as a mechanic's helper by Coleman. He received wages of $2 per day when he worked as extra man for the former, and wages based on a percentage of each job when working for the latter. It so happened that on the day of the accident, petitioner had worked all day for Coleman on a certain auto repair job. He had finished his day's work and was awaiting the arrival of the customer on whose car repairs had been made to collect the charges; and it was while he was standing idly by that Harry N. Chezzi, employe of the Market-Arlington Company and in charge of the gasoline pumps, instructed him to change a tire on a car which had just been serviced with gasoline and oil. The accident which is the subject-matter of the present proceeding occurred while the petitioner was in the act of changing the tire. Dispensing gasoline from its gasoline service station situated immediately in front of its garage was part of the business operations of the Market-Arlington Company and not that of Coleman, and it may be inferred that inflating and changing tires of customers from time to time were incidents reasonably connected with this type of business. The question then arises, was the petitioner at the time of the accident a mere volunteer, or was he acting within the scope of his employment with the Market-Arlington Company in performing an act in furtherance of its interest? Clearly the latter.

The subject of dual employment is not covered by any specific provision in the New Jersey act. There appears to be no decisions touching on the subject in this state. The few decisions of other jurisdictions are not entirely in accord; some

of the cases holding the several employers jointly liable, while others hold the employer, for whom the work was being performed at the time of the accident, individually liable. Of the two rulings, I believe the latter to be the more forceful, and the one which I am inclined to adopt. And so in the instant case, the particular work being performed by the petitioner at the time of the accident was that of the Market-Arlington Company, and was not in any sense the work of Coleman. Accordingly, liability attaches to the Market-Arlington Company, alone.

"The relation of employer and employe may be simultaneously sustained between several employers and the same employe. Where this situation exists, the employers have, in several cases, been held jointly liable for compensation to an employe injured while on the property of, or doing work for, one of them, at least where there was a joint hiring, or where the employe was injured while performing a duty for the common benefit of all the employers; and it has been held, further, that where there is a relation of co-employers, the liability is joint and not several. On the other hand, there is authority holding, on the ground that the burden should be placed upon the particular industry in which the employe was working when injured, that only the employer in whose place of business, or in doing whose work, the employe was injured should be held liable for compensation, and not one for whom the work in which the employe was injured was not being done, nor the employers jointly, at least in the absence of a joint agreement between the employers or of a joint employment or control by them, and that the mere fact that each of two employers knows that the employe is performing a service for the other does not create a joint employment." *Corp. Jur.*, 71 *C. J.* 401, 402.

I find therefore as a fact that at the time of the accident petitioner was in the employ of the Market-Arlington Company, that the accident arose out of and in the course of said employment, and that it is immaterial that no remuneration was to be made to him for the precise service which he was rendering at the time.

\*　　\*　　\*　　\*　　\*　　\*　　\*

JOHN J. STAHL,
*Deputy Commissioner.*