In the Matter of the Claim of MARY JOHNSTON, on Behalf of Herself and Others, Respondent, against INTERNATIONAL FREIGHTING CORP. et al., Appellants, and NESSA CORPORATION et al., Respondents.

WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 9, 1949.

*George A. Garvey,* attorney (*James I. McGuire* of counsel), for appellants.

*Nathaniel L. Goldstein, Attorney-General,* for Workmen's Compensation Board, respondent.

*Isidor Neuwirth* for claimant-respondent.

*John P. Smith,* attorney (*Albert P. Thill* of counsel), for Nessa Corporation and Liberty Mutual Indemnity Insurance Company, respondents.

SANTRY, J. During the month of May, 1946, the respondent Nessa Corporation, hereinafter referred to as Nessa, had a contract with the War Shipping Administration, hereinafter referred to as the Administration, to act as contract stevedore for the Administration at Pier 2, Erie Basin, Brooklyn, New York. Under the provisions of the contract Nessa was to furnish stevedores for the loading and unloading of vessels at such pier. At the same time International Freighting Corp., hereinafter referred to as International, was a general agent for the Administration in the operation of said pier.

On the 24th day of May, 1946, Frank Johnston, who was employed on the pier as a harbor master, fell from the pier into the water and was drowned. The Workmen's Compensation Board made an award of death benefits to the widow and two children of the deceased. The award was made 50% against the Liberty Mutual Indemnity Insurance Company, the carrier for Nessa, and 50% against the Indemnity Insurance Company of North America, the carrier for International. International and its carrier have appealed and ask that the award and decision be reversed insofar as the award directs that 50% thereof be paid by the Indemnity Insurance Company of North America. The amount of the award or the right of the claimants to receive it are not contested. The only question raised on the appeal is whether the entire amount of the award should be paid by the carrier for Nessa, or payment divided equally between the carriers for Nessa and International. The answer to the question depends upon whether the deceased at the time of his death was a special employee of International as well as a general employee of Nessa.

Under the arrangements in effect at the time of the accident International, as general agent for the Administration, had exclusive control of the pier and was in general charge of the operations there in connection with the loading and unloading of vessels. Nessa furnished the stevedores who were the actual handlers of the freight on and off the ships. It procured these stevedores by hiring so many as were needed for the day's operations from those who appeared at the pier seeking employment. The stevedores worked under the direction of a superintendent stevedore employed by Nessa.

In connection with its function of directing and controlling the operations carried on at the pier, International had in its employ a dock boss named Leo Woods, who exercised a general supervision over such operations. To assist him in his work Woods selected and hired from among the stevedores procured by Nessa, one or more harbor masters, who after such selection worked under the sole and direct supervision of Woods. The deceased was such a harbor master, selected and hired by Woods and working under his direction at the time of his death. The main duties of the deceased were to see that barges and scows were placed at the dock so they could be loaded and unloaded, to get the names and loading time of tugs, and to keep the slips clear when ships were docking. All of these things he did under specific instructions from Woods. He did none of the work of a stevedore. He took no part in handling freight being

taken on or off the ships. Nessa exercised no control over the selection of the deceased as a harbor master, and gave him no instructions in relation to his work. The deceased's time was kept by Woods, who turned it over to Nessa, and the deceased, as well as the stevedores, were paid by Nessa's paymaster. Nessa billed International for the actual wages together with the cost of insurance and social security, and in the case of the stevedores, an additional charge of ten cents an hour. Nessa did not bill International for the additional ten cents an hour on the deceased's time. Nessa was reimbursed and paid by International as agent for the Administration.

Under these circumstances the deceased was clearly an employee of International. He was hired by International, and if unsatisfactory could have been discharged by it. He took his orders from and worked under the direction of International. The work that he did was in carrying out the duties of International in its function as director of operations at the pier. The fact that his wages may have been ultimately supplied by the Administration does not change the situation. The record does not show what arrangements existed between International and the Administration with reference to compensation paid to employees of the former, or to expenses incurred in carrying out its agency contract. It may well have been operating under a cost-plus contract, or an agreement whereby the Administration was to reimburse it for wages paid to its own employees. In any event, the status of the deceased could not be affected. (*Matter of De Noyer* v. *Cavanaugh*, 221 N. Y. 273; *Matter of Dennison* v. *Peckham Road Corp.*, 295 N. Y. 457.)

The appellants assert that inasmuch as International was the agent of a disclosed principal, all persons employed by it were not its employees but were employees of the principal. This position cannot be sustained. There is no reason in law or in fact why an agent for a disclosed principal may not have its own personal employees to assist in carrying out the work that it does for its principal. It is difficult to see how a corporation acting for a disclosed principal in an extensive undertaking could possibly perform its functions as agent without the assistance of its own employees. An agent does not lose its identity while acting for a principal. It is not disputed that Woods was an employee of International. It follows that the deceased, hired by Woods and directed by him as his assistant, was likewise in the employ of International.

The contract between Nessa and the Administration contained the following provision: " 20. Status of Employees. All

Employees of the Stevedore or of any other person or organization employed in performance of the work shall at all times be the employees of the Stevedore, or of such other person or organization, as the case may be, and are not employees of the Administration.''

The appellant contends that this makes the deceased an employee of Nessa alone. The contention is untenable. In the first place the contract is not between Nessa and International. It is between Nessa and a third party. This fact distinguishes the case at bar from the case of *Matter of Knox* v. *Gimbel Bros.* (258 App. Div. 1013) cited by the appellants. In the *Knox* case the contract was between the parties involved. In the second place, the provision quoted contemplates that there might be employees of others than Nessa involved in the operations at the pier. International qualifies for the classification with '' other person or organization '' mentioned in the contract.

The award and decision appealed from should be affirmed, with one bill of costs, one half to the respondents, Nessa Corporation and Liberty Mutual Indemnity Company, and one half to the claimant-respondent, with disbursements to each.

FOSTER, P. J., HEFFERNAN, BREWSTER and BERGAN, JJ., concur.

Award and decision affirmed, with one bill of costs, one half to the respondents, Nessa Corporation and Liberty Mutual Indemnity Company, and one half to the claimant-respondent, with disbursements to each.