94 N.J. Super. 426 (1967)
228 A.2d 711
EMIL BLESSING, PLAINTIFF-RESPONDENT,
v.
T. SHRIVER AND CO., INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1966.
Decided April 10, 1967.
*427 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. James D. Carton III argued the cause for appellant (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
Mr. Philip G. Auerbach argued the cause for respondent (Mr. Louis M. Drazin, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff Emil Blessing, an employee of the Nielson Detective Agency from whom he had recovered workmen's compensation benefits for an injury, commenced this tort action against defendant T. Shriver and *428 Co., Inc., alleging that his injury had been brought about by its negligence. The jury returned a verdict in favor of plaintiff and the defendant appeals from the judgment entered thereon.
Plaintiff had been employed by Nielson as a "guard" for about two years prior to the mishap. His services were not performed at any "permanent" location; he was transferred from one locale to another as directed by his employer. Nielson paid his salary, provided an agency uniform, designated where he should work, and instructed him as to the particulars of each job. He was responsible directly to the Nielson supervisor in charge of the guards at the job site, through whom he received work instructions and any complaints or reprimands. After working about nine months as a guard for a Jersey City company whose name he could not remember, plaintiff was transferred by Nielson to defendant's foundry at Harrison, where he worked for nearly three months before the accident. There his immediate supervisor was Lieutenant Kearney, a Nielson employee.
Normally, plaintiff's daily working hours at the Shriver plant were from 3 to 11 P.M., and his duties consisted of tending the main gate until 5 P.M. and then making eight rounds of the premises for the purpose of checking for fires, thefts and other hazards; the work schedule of the guards was arranged between Nielson and Shriver. Plaintiff was required to activate various time clocks or control devices which relayed signals to a receiving station at the Nielson headquarters in Newark, indicating security supervision at the plant. All unusual occurrences were required to be reported in the Shriver company's log book.
Metal castings were manufactured at the Shriver plant and the floor of the foundry building was always covered with sand. Near the foreman's office in the foundry was a signal clock, identified as number 3 A.D.T. It was located on the wall and below it there was a ledge which stood eight inches above the floor level and extended approximately two feet from the wall. In the immediate area was a water cooler *429 which had been leaking for about two weeks prior to the accident. According to Blessing's testimony, "it was leaking from the bottom and the water ran over on this ledge and down into the sand and the water would form on the ground there where we walked to punch the clock." He further stated that he reported this condition to his supervisor and the foreman of the foundry; it was not, however, noted in the log book.
On August 2, 1964 at 2:30 P.M. (the early hour was the result of a special Sunday schedule), plaintiff, on his seventh round, approached clock No. 3, placed his left foot on the ledge to reach the signal device on the wall, and when his right foot "slid" on the wet sand, he fell over against a stack of castings, injuring his right elbow.
The jurors found specifically that defendant was negligent, plaintiff was not guilty of contributory negligence, and that plaintiff was not an employee of the defendant. The employment issue was submitted to the jury at the insistence of defense counsel in opposition of plaintiff's motion that it be resolved by the court as a matter of law. The verdict in plaintiff's favor was in the amount of $9,375.
The primary question raised on appeal is whether defendant was a special employer of Blessing and thus immune from common law tort liability by virtue of our Workmen's Compensation Act. The trial court's charge to the jury and the sufficiency of the evidence to support a finding of negligence against the defendant are also challenged.
Since there is no reported decision in this State treating of the Nielson-type agency as related to the problem here involved, a review of the pertinent authorities is in order.

I
There is no question that in this jurisdiction an employee, for the purposes of workmen's compensation, may have two employers, both of whom may be liable to him in compensation, and a recovery against one bars the employee *430 from maintaining a common law tort action against either for the same injury. Wood v. Market-Arlington Co., Inc., 15 N.J. Misc. 272, 274, 190 A. 785, 786 (Dept. Labor 1937); Scott v. Public Service Interstate Transp. Co., 6 N.J. Super. 226, 229 (App. Div. 1950). Whether the common law action is precluded is thus dependent upon a determination that the borrower of an employee is, in fact, a special employer. Professor Larson, in discussing "Lent Employees and Dual Employment," lays down a three-pronged test in order to establish employment within the terms of the act:
"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
(a) The employee has made a contract of hire, express or implied, with the special employer;
(b) The work being done is essentially that of the special employer; and
(c) The special employer has the right to control the details of the work.
When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation." 1A Larson, Workmen's Compensation (1966), § 48.00, p. 710
Other authorities add two more co-equal factors, namely, whether the special employer (1) pays the lent employee's wages, and (2) has the power to hire, discharge or recall the employee. 3 Schneider, Workmen's Compensation (3d ed. 1943), § 782(c), pp. 19-21; 99 C.J.S. Workmen's Compensation § 47(c) (3, 4), pp. 249-250; Thomas v. Hycon, Inc., 244 F. Supp. 151, 155-156 (D.D.C. 1965). Note generally, Restatement Agency 2d, § 227 (1958).
There is no uniform agreement as to a predominant factor.[1] The sheer weight of authority is undoubtedly on the *431 side of "control." See Comment, 26 Cal. L. Rev. 370, 371 (1938). Larson places the most importance on contract of hire or "consent." Larson, op cit., § 48.10, p. 711. The federal authorities, following the landmark decision in Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909), are uniform that the "ultimate test is: Whose is the work being done? * * * In determining whose work is being done, the question of the power to control the work is of great importance * * *." Jones v. George F. Getty Oil Co., 92 F.2d 255, 263 (10 Cir. 1937), certiorari denied sub nom. Associated Indemnity Corporation v. George F. Getty Oil Co., 303 U.S. 644, 58 S.Ct. 644, 82 L.Ed. 1106 (1938). Accord, Shenker v. Baltimore and Ohio R. Co., 374 U.S. 1, 5-6, 83 S.Ct. 1667, 10 L.Ed.2d 709, 713-714 (1963). See generally, Annotation, "Workmen's Compensation: Liability of General or Special Employer for Compensation to Injured Employee," 152 A.L.R. 816, 821 (1944).
In Rongo v. R. Waddington & Sons, 87 N.J.L. 395 (Sup. Ct. 1915), the court held that a servant was entitled to look *432 to his general master for compensation, rather than the special employer, "where a servant employed by a master directly is required as part of his contract of employment to work for some other person for a compensation payable not to the servant, but to the immediate master." (87 N.J.L., at p. 398) Accord, Furey v. Thompson-Starrett Co., 1 N.J. Misc. 176 (Sup. Ct. 1923). Various indicia were set forth in Toner v. International, etc., Atlantic City, 113 N.J.L. 29 (E. & A. 1934), where the court spoke of control as to how the work should be done, the power to discharge and the payment of salary. The element of consent was elevated to a predominant position in Miller v. National Chair Co., 19 N.J. Misc. 275, 278, 18 A.2d 847, 849 (Dept. Labor), affirmed 127 N.J.L. 414, 422-423 (Sup. Ct. 1941), affirmed o.b. 129 N.J.L. 98 (E. & A. 1942), but in Younkers v. Ocean County, 130 N.J.L. 607, 609 (E. & A. 1943), the court declared, "The question of whether the general employer, or the specific employer is the master turns upon *433 the decision as to who has the right to exercise control over the servant." (Emphasis supplied)
Subsequently, our courts turned away from placing primary emphasis on control and stressed the question of whose interest the employee was furthering at the time of the accident. See Devone v. Newark Tidewater Terminal, Inc., 14 N.J. Super. 401, 406-419 (App. Div. 1951); Viggiano v. Reppenhagen, 55 N.J. Super. 114, 118-121 (App. Div. 1958); and note the several factors (a contract of employment, power to hire, control, direction of work, payment of wages, and power of dismissal) mentioned in Runk v. Rickenbacher Transportation Co., 31 N.J. Super. 350, 354-355 (App. Div. 1954).
Recent decisions concerned with the problem of whether an individual was an employee or an independent contractor lay great stress upon the question of whose work the employee was doing. In Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. 1958), this court gave extensive consideration to the control test. But, it was also indicated that control may not be the key test; it was recognized that in certain situations the most relevant element may well be the "`relative nature of the work' test." (53 N.J. Super., at pp. 204-206)
The following year Marcus v. Eastern Agricultural Ass'n, Inc., 58 N.J. Super. 584 (App. Div. 1959), was decided, with a dissent which advanced the view that the control test was not always determinative and, where it is difficult for an employer to control the details of how the work should be done, the relative nature of the work test was preferable. Our Supreme Court, in a per curiam decision, adopted the dissenting opinion. 32 N.J. 460 (1960). Although the control test is still a standard that the judiciary in this State considers, it is not necessarily the predominant factor. See Brower v. Rossmy, 63 N.J. Super. 395, 404-406 (App. Div. 1960), certification denied 34 N.J. 65 (1961); Buchner v. Bergen Evening Record, 81 N.J. Super. 121, 130-131 (App. Div. 1963), and Tofani v. LoBiondo Brothers *434 Motor Express, Inc., 83 N.J. Super. 480, 493 (App. Div. 1964), affirmed o.b. 43 N.J. 494 (1964).
Underlying the trend of our law as it thus developed is the recognition that the criteria for the determination of an employee-employer relationship "are not exclusive, but must be rationalized and applied so that each case may be considered and determined upon its own particular facts." Long v. Sims Motor Transport Lines, 124 Ind. App. 504, 117 N.E.2d 276, 278 (App. Ct. 1954). As the court there declared, "The rules and tests are not so hard and fast and inexorable that they must be present and controlling en masse in every case before the employment relationship, as defined and contemplated by the statute, can be declared." Ibid.

II
Defendant relies upon the particular applications of the general legal principles found in Chickachop v. Manpower, Inc., 84 N.J. Super. 129 (Law Div. 1964), and St. Claire v. Minnesota Harbor Service, Inc., 211 F. Supp. 521 (D. Minn. 1962). See also Daniels v. MacGregor Co., 2 Ohio St.2d 89, 206 N.E.2d 554 (Sup. Ct. 1965). All dealt with a Manpower, Inc. employment agency and determined that the respective employees were barred from suing the special employers in tort.
In Chickachop the trial judge specifically found that the employee "knew he would be hired out to special employers, and accepted such employers just as he accepted the general employer. * * * He intended to have two employers and all parties concerned felt such a condition existed." The trial judge also concluded that the "work being done was essentially that of the special employer, and said employer controlled the details of the work." (84 N.J. Super., at pp. 137, 139) The district judge in St. Claire observed that although Manpower was in the business of supplying labor, for a price, and might undoubtedly control its employees while on the job at someone else's business location, it was *435 not generally done and would not be approvingly countenanced by the agency's customers. The court found, therefore, that the customer controlled the workers, if not directly, indirectly through its ability to instruct Manpower and dispense with its service if it became uncooperative. In Daniels the court was of the opinion that the customer, MacGregor, had the right to control the employee in the manner and means of performing the work being done.
A group of New York cases are in general accord with the rationale and conclusion of the Manpower cases. In Meyer v. Tops Temporary Personnel, 286 App. Div. 1048, 144 N.Y.S.2d 775 (App. Div.), modified as to costs 286 App. Div. 1123, 146 N.Y.S.2d 685 (App. Div. 1955), it was held that a worker furnished by a company supplying temporary office help to business and banking firms in New York City became the employee of the special employer to whom he was sent. Meyer was sent by Tops to the Manufacturers Safety Deposit Company where he had been working for over a year as a vault custodian when he was injured during the course of his employment. The court sustained the finding of the Workmen's Compensation Board that Tops was the general employer of claimant and Manufacturers was his special employer and, as such, the compensation award could be assessed "against both or solely against either." Accord, Ettlinger v. State Insurance Fund, 12 A.D.2d 568, 206 N.Y.S.2d 739 (1960) (office Temporaries, office worker supply agency; dual employment apparently recognized, and award imposed on general employer, on authority of Meyer); Diaz v. Ulster Vegetable Growers Co-operative, 282 App. Div. 426, 123 N.Y.S.2d 321 (1953), affirmed mem. 306 N.Y. 859, 118 N.E.2d 916 (Ct. App. 1954) (supply agency for Puerto Rican agricultural workers held to be general employer; farmer to whom the worker was sent held to be special employer also liable in compensation); Johnston v. International Freighting Corporation, 274 App. Div. 728, 87 N.Y.S.2d 297, motion for reargument denied 275 App. Div. 865, 89 N.Y.S.2d 523 (1949), motion for *436 leave to appeal denied 299 N.Y. 798, 87 N.E.2d 689 (Ct. App. 1949) (stevedore supply agency general employer; company that actually controlled pier at which work was being done held to be special employer also liable in compensation).

III
The evidence in the matter sub judice must be reviewed with the foregoing principles in mind. There can be no doubt that the guardwork done by plaintiff was undertaken in pursuance of Nielson's contract with defendant. The benefit derived from the operation certainly accrued to defendant, but the actual work being done was the security job that Nielson was hired to do. The control exercised by defendant over Blessing was only incidental in nature and of no particular legal significance. Also important is the fact that the proofs do not suggest any consensual relationship between plaintiff, a so-called "loaned" employee, and defendant for whose benefit his services as a guard were rendered. While such a consent may be expressed or implied, there is nothing in the record upon which to predicate a finding of knowledgeable consent or a fair inference that an employment relationship between those parties existed. Larson has interpreted the decisions as "insisting upon a showing of a deliberate and informed consent by the employee" before an employer-employee status will be considered as a bar to a common law action. Larson, op cit., § 48.10, p. 711. The same reasoning is enunciated in 99 C.J.S., op cit., § 47(b), pp. 244-246.
Nielson operated a safety control system, for a price, which plan it put into effect for its customer by dispatching employed guards to perform a particular service for which the general employer was responsible. Nielson was in no true sense of words an "employment agency." Defendant did not hire individual guards from Nielson but, rather, engaged the latter as an operational security organization to furnish specialized industrial protection.
*437 A New York decision comes close to the factual circumstances here under review. Murray v. Union Ry. Co. of New York City, 183 App. Div. 209, 170 N.Y.S. 601 (1918), reversed 229 N.Y. 110, 127 N.E. 907 (Ct. App. 1920), involved the Washington Detective Bureau which had undertaken to furnish substitute motormen and conductors for defendant's regular employees who were on strike, and also guards or watchmen to protect the passengers and cars from violence. Plaintiff was one of those guards, and he was injured in a collision as a result of defendant's negligence. The question before the court was whether plaintiff was an employee, either general or special, of defendant. If he were, the workmen's compensation remedy would be exclusive of every other; if he were not, the common law remedy for negligence would survive a compensation proceeding. The Appellate Division held that plaintiff was "performing services for the interests of defendant. Defendant had the same authority over plaintiff as if it had directly hired him. This detective bureau was not operating this railroad." (170 N.Y.S., at p. 602) Accordingly, it dismissed the tort action. The Court of Appeals, per Cardozo, J., reversed in an opinion which, in pertinent parts, reads as follows:
"Beyond doubt, the detective bureau was the plaintiff's general employer. * * *.

* * * * * * * *
* * * [E]mployment, like any other contract, presupposes understanding. The new relation cannot be thrust upon the servant without knowledge or consent. * * * He must understand that he is submitting himself to the control of a new master. * * * Understanding may be inferred from circumstances, but understanding there must be. Common-law rights and remedies are not lost by stumbling unawares into a new contractual relation. There can be no unwitting transfer from one service to another.
* * * Knowledge and approval may be inferred where the servant, continuing in the service, takes his orders from some one other than the hirer or the hirer's representative. Here the hirer's representative was, or seemed to be, in continuous authority. A detective agency may undertake to guard the property of another with its own men and in its own way. * * * It may undertake, on the other hand, to furnish another with men, so that he may guard his property for himself. * * * In the one undertaking, the relation of employment is unchanged. *438 In the other, a new relation arises when the transfer is effected and the contract is fulfilled. Whether this undertaking fell in the one class or in the other, the plaintiff did not know. He remained, in default of knowledge, the servant of the hirer." (127 N.E., at pp. 907-908; citations omitted)
Similar holdings in favor of an employee's right to sue in tort can be found in cases involving  a night watchman furnished by one in the security business to a company in need of the service, Howe Fire Apparatus Co. v. Humphrey, 113 Ind. App. 167, 46 N.E.2d 259 (App. Ct. 1943); a nurse supplied to an industrial concern by a visiting nurses' association, Visiting Nurses' Ass'n v. Industrial Commission, 195 Wis. 159, 217 N.W. 646 (Sup. Ct. 1928); chauffeurs whose services are rented, together with an automobile, to customers of an agency in such a business, Shepard v. Jacobs, 204 Mass. 110, 90 N.E. 392, 26 L.R.A., N.S., 442 (Sup. Jud. Ct. 1910); McNamara v. Leipzig, 227 N.Y. 291, 125 N.E. 244, 8 A.L.R. 480 (Ct. App. 1919); Densby v. Bartlett, 318 Ill. 616, 149 N.E. 591, 42 A.L.R. 1406 (Sup. Ct. 1925); caddies assigned by a golf club to work for a golfer while he is on the course, Claremont Country Club v. Industrial Acc. Commission, 174 Cal. 395, 163 P. 209, L.R.A. 1918F, 177 (Sup. Ct. 1917); Essex County Country Club v. Chapman, 113 N.J.L. 182 (Sup. Ct. 1934); free lance jockeys hired by an owner, Simmons v. Kansas City Jockey Club, 334 Mo. 99, 66 S.W.2d 119 (Sup. Ct. 1933), or a trainer, Gross v. Pellicane, 65 N.J. Super. 386 (Cty. Ct. 1961). Some cases in the area of manual labor supply agencies have also concluded that only the general employer was liable in compensation, Hartford Accident & Indemnity Co. v. Addison, 93 F.2d 627 (5 Cir. 1937), rehearing denied January 18, 1938 (skilled oil field workers); Ishmael v. Henderson, 286 P.2d 265 (Okl. Sup. Ct. 1955) (roustabout laborers for general oil field work). Per contra, American Stevedores Co. v. Industrial Commission, 408 Ill. 449, 97 N.E.2d 325 (Sup. Ct. 1951) (stevedores supplied for the loading and unloading of freight cars and trucks, and *439 general warehouse work); Shipman v. Macco Corporation, 74 N.M. 174, 392 P.2d 9 (Sup. Ct. 1964) (work crews supplied for "engineering layout work").

IV
An evaluation of the relevant legal factors, and the prior judicial considerations of analogous situations, convinces us that, on the basis of the record herein, Nielson was Blessing's general employer and he was not a special employee of defendant. We are persuaded by the fact that Nielson retained, at all times, effective control over the work being done by Blessing; the lack of a contract of hire between Blessing and defendant, and the fact that he was doing the very work that defendant hired Nielson to do by means of its (Nielson's) own employees. We think this case is clearly distinguishable from the worker supply agency cases represented by the Manpower decisions. Therein the special employer exercised control, the employee always knew he would be hired to personally do someone else's work, and he consented to the transfer.
There being no serious factual dispute as to the particulars of plaintiff's employment, the trial court should have ruled, as a matter of law, that the common law suit was not barred, and Blessing was not a special employee of the defendant. We find, therefore, that no prejudice was visited upon the defendant by the court's charge or by the verdict of the jury with respect to the employment issue.

V
Since defendant is not immunized from common law tort liability, we turn to the remaining points raised on appeal.
Plaintiff's proofs established that his right foot slipped on the sand which was saturated with water emanating from a defective cooler. He testified that the hazardous condition, located in the area of the time-signal device, had been brought to the attention of defendant's foreman about two weeks before *440 the accident. In the circumstances reasonable men could infer that the floor of the foundry was slippery at the point where plaintiff fell, and that the leakage of water on the sandy floor, causing that condition, should have been remedied through the exercise of reasonable care. The evidence was sufficient to raise a fact question to be resolved by the jurors. Bell v. Eastern Beef Co., 42 N.J. 126, 129, 130 (1964); Bozza v. Vornado, Inc., 42 N.J. 355, 360-361 (1964).
We cannot say that the instructions of the trial court to the jury on the law of negligence, proximate cause, contributory negligence and damages were not fair and reasonably adequate.
Judgment affirmed.
NOTES
[1] See, e.g., cases from the following jurisdictions: California  McFarland v. Voorheis-Trindle Company, 52 Cal.2d 698, 343 P.2d 923, 927 (Sup. Ct. 1959) (right of control and the actual exercise thereof termed the key factor; importance of contract of hire recognized); Argonaut Insurance Exch. v. Industrial Acc. Com'n, 154 Cal. App.2d 703, 316 P.2d 759, 762 (D. Ct. App. 1957) (relies on all three of the factors set forth by Larson). Florida  Rainbow Poultry Co. v. Ritter Rental System, Inc., 140 So.2d 101, 103 (Sup. Ct. 1962) (adopts the three criteria stressed by Larson). Illinois  Fransen Const. Co. v. Industrial Commission, 384 Ill. 616, 52 N.E.2d 241, 245 (Sup. Ct. 1943), rehearing denied January 12, 1944 (court stresses the control test). Indiana  Uland v. Little, 119 Ind. App. 315, 82 N.E.2d 536, 538 (App. Ct. 1948); Jackson Trucking Co. v. Interstate Motor Freight Sys., 122 Ind. App. 546, 104 N.E.2d 575, 578 (App. Ct. 1952) (no single factor held sufficient to denominate one a special employer; of the various factors, control given the most weight). Kansas  Bright v. Bragg, 175 Kan. 404, 264 P.2d 494, 499-500 (Sup. Ct. 1953) (control termed "the real test"). Louisiana  Rooney v. Overseas Ry., 173 La. 183, 136 So. 486 (Sup. Ct. 1931); Casualty Reciprocal Exch. v. Richey Drilling & Well Service, 137 So.2d 127, 130-131 (Ct. App. 1962) (two factors are given primary consideration, viz., a contract of hire and a determination as to whose work is being done). Maine  Boyce's Case, 146 Me. 335, 81 A.2d 670, 673 (Sup. Jud. Ct. 1951) (equal consideration given to control and a contract of hire). Maryland  L & S Construction Company v. State Accident Fund, 221 Md. 51, 155 A.2d 653, 656-657 (Ct. App. 1959) (all factors given equal consideration). Massachusetts  Abbott v. Link-Belt Co., 324 Mass. 673, 88 N.E.2d 551, 554 (Sup. Jud. Ct. 1949); In re Brooks' Case, 338 Mass. 692, 157 N.E.2d 231 (Sup. Jud. Ct. 1959); In re Keaney's Case, 341 Mass. 571, 171 N.E.2d 154, 156 (Sup. Jud. Ct. 1960) (control and contract of hire considered; latter seems to be the predominant concern). Missouri  Schepp v. Mid City Trucking Co., 291 S.W.2d 633, 640-642 (Mo. Ct. App. 1956) (all factors considered, none predominates). Nebraska  Shamburg v. Shamburg, 153 Neb. 495, 45 N.W.2d 446, 450-451 (Sup. Ct. 1950) (primary emphasis is on right of control). Pennsylvania  Mature v. Angelo, 373 Pa. 593, 97 A.2d 59, 60-61 (Sup. Ct. 1953); Mitchell v. East Nantmeal Township, 181 Pa. Super. 482, 124 A.2d 150, 151 (Super. Ct. 1956) (all factors considered; control given primary consideration). Vermont  Mercier v. Holmes, 119 Vt. 368, 125 A.2d 790, 794-795 (Sup. Ct. 1956) (reliance placed on all factors listed by Larson). Wisconsin  Rhinelander Paper Co. v. Industrial Commission, 206 Wis. 215, 239 N.W. 412, 413 (Sup. Ct. 1931); Springfield Lumber, Feed and Fuel Co. v. Industrial Commission, 10 Wis.2d 405, 102 N.W.2d 754, 757-759 (Sup. Ct. 1960) (various factors considered; contract of hire held to be the most important).

In Louisiana, Maryland and Wisconsin there is, apparently, a presumption that if the general employer is in the business of furnishing workers, and the services they perform, he alone is liable in workmen's compensation.