237 N.J. Super. 452 (1989)
568 A.2d 123
DONALD DOMANOSKI, PETITIONER-RESPONDENT,
v.
BOROUGH OF FANWOOD, RESPONDENT-RESPONDENT.
DONALD DOMANOSKI, PETITIONER-RESPONDENT,
v.
THE GREAT ATLANTIC & PACIFIC TEA COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1989.
Decided December 29, 1989.
*453 Before Judges PRESSLER, LONG and LANDAU.
Robert Silver argued the cause for appellant (Michals, Wahl, Silver & Leitner, attorneys for appellant).
Israel Gazek argued the cause for respondent Domanoski.
Robert J. Young argued the cause for respondent Borough of Fanwood (Hoagland, Longo, Oropollo & Moran, attorneys).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is a workers' compensation case. Petitioner Donald Domanoski, a police officer employed by respondent Borough of Fanwood, sustained an injury while arresting a shoplifter in a supermarket owned and operated by respondent Great Atlantic *454 & Pacific Tea Company (A & P). Petitioner was, at the time of the arrest, off duty and working as a security guard for A & P at an hourly rate paid by A & P pursuant to an arrangement between the Fanwood Police Department and local enterprises by which uniformed and armed off-duty officers were permitted to perform security functions for private business. Following a bifurcated trial on liability, the judge of compensation found as a matter of fact that at the time of his injury, petitioner was in the joint employ of both respondents but that Fanwood was equitably entitled to indemnification from A & P for its share of the compensation burden. On leave granted, A & P asserts that it was not petitioner's employer for compensation purposes and that even if it was a joint employer, it owed the municipality no obligation of indemnification. Fanwood does not challenge the finding that it was a joint employer, asserting the correctness of the indemnification order. We affirm the judge's joint-employment conclusion but disagree that Fanwood is entitled to indemnification.
There is no substantial dispute of fact. As made clear by the testimony of Fanwood's Chief of Police, the department, as a matter of policy and by way of a formal program, cooperates with local businesses in making off-duty officers available to them at their expense for the performance of guard and security duties. The Police Chief first reviews each request for the services of an off-duty officer in order to determine the acceptability of the offered hourly wage,[1] the nature of the services to be performed, and the appropriateness of their performance by an off-duty officer. Approved requests are then posted at headquarters, and officers who desire the employment sign up for it. The police captain then makes the specific assignments on a rotational seniority basis.
*455 Petitioner had signed up for the A & P job, which required a fully uniformed and armed officer on the premises between 4 p.m. and midnight daily, and he had worked there at least several times a week for about a year-and-a-half before the accident. His specific duties were assigned upon his arrival, generally including the checking of the loading area and escorting cashiers to the store's vault. He was generally, however, hired to provide a deterrent police presence and, as he described it, "I felt I was there as a police officer to enforce any laws that I might see violated." According to the Chief of Police, an officer performing such a private special assignment was nonetheless an off-duty officer and as such was required to respond to a crime taking place in his presence and to arrest the suspect. Thus,
if he sees what he perceives to be a crime taking place, it is within his authorization and duty to attempt to stop that crime and to arrest the individual; is that correct?
A. That's his sworn duty, yes.
* * * * * * * *
Q. And if Officer Domanoski were in the process of arresting an individual, patting a man down, placing a handcuffed or person's hands on his hips, that would be within his police duty, would it not?
A. Yes, sir.
Q. And would it also be correct that the instructions on how to arrest, how to pat down, how to bring somebody into the police station, are all those directions derived directly from the Borough of Fanwood and from the police academy?
A. Yes, sir.
On December 18, 1985, as petitioner was providing what he described as internal security in the store, he saw a patron take a package of meat out of a display case and hide it on his person. He apprehended the thief, and in the course of patting him down, he wrenched his back, ultimately requiring surgery for a herniated disc. He sought workers' compensation from both Fanwood and A & P, and these proceedings ensued.
It is well settled in this jurisdiction that for workers' compensation purposes an employee may be simultaneously employed by more than one employer, either because of the *456 employee's separate contracting with multiple employers or because his general employer has "lent" him to a special employer. See generally Knight v. Cohen, 56 N.J. Super. 516 (App.Div. 1959), aff'd 32 N.J. 497 (1960); Conway v. Mister Softee, 93 N.J. Super. 286 (App.Div. 1967), aff'd 51 N.J. 254 (1968); Blessing v. T. Shriver and Co., 94 N.J. Super. 426 (App.Div. 1967); Andersen v. Well-Built Homes of Central Jersey, Inc., 69 N.J. Super. 246 (App.Div. 1961); Cser v. Silverman, 50 N.J. Super. 125 (App.Div. 1958); Scott v. Public Services Interstate Transp. Co., 6 N.J. Super. 226 (App.Div. 1950); Chickachop v. Manpower, Inc., 84 N.J. Super. 129, 136 (Law Div. 1964). The question to be determined in the dual employment situation is whether, at the time of the injury, the petitioner was, as a factual matter, the employee of one or the other or both of the employers.
In determining which among multiple employers are liable for workers' compensation, this court has noted the indicia of employment that ordinarily require evaluation, including the existence of a separate agreement between the employee and each employer, the determination of whose work is being done at the time of the compensable injury, which has the right to control the details of the work, which pays, and which has the power to hire, discharge or recall the employee. See Blessing v. T. Shriver and Co., supra, 94 N.J. Super. at 430. The relative weight to be accorded these factors and the manner in which they are to be balanced are not, however, as we pointed out in Blessing, subject to mechanical or automatic application. Rather, the criteria determinative of the employment relationship must be "rationalized and applied so that each case may be considered and determined upon its own particular facts." Id. at 434. And, as we held in Blessing, in the dual employment situation, the most significant inquiry is the determination of "whose interest the employee was furthering at the time of the accident." Id. at 433. See also Knight v. Cohen, supra, 56 N.J. Super. at 520, in which we characterized the jointly-responsible dual-employee situation as one in which there is "a unity *457 of control and authority in the two employments, with a corresponding intermingling of the employee's duties on both jobs to a point where it [is] impossible to separate them."
Applying both the "whose interests" test as well as the weight of the traditional indicia, we are satisfied that petitioner was, at the time of his injury, the employee of both respondents for compensation purposes. As to Fanwood, which does not dispute his employee status for that purpose, it is clear that petitioner was acting as a police officer in making the arrest, was required to perform that function in the manner and under standards applicable to all police arrests, and irrespective of his employment at that moment as an A & P security guard, retained his status as an off-duty officer subject to the peacekeeping and law enforcement obligations of an off-duty police officer. See generally Alessio v. Fire & Ice, Inc., 197 N.J. Super. 22 (App.Div. 1984), noting that an officer required by statute or department regulations to perform police functions while off duty is ordinarily entitled to workers' compensation benefits if he then sustains an injury.[2] We are also satisfied that in making the arrest here, petitioner was serving the public interest as well as a private one.
Our conclusion that under the circumstances here petitioner remained an employee of his department at the time of his injury accords with the decisions of other states which have *458 considered this issue in similar factual situations. Thus, in City of Manchester v. Huard, 113 N.H. 81, 301 A.2d 719 (Sup.Ct. 1973), a police officer who had an off-duty job as a security guard at a restaurant which he performed in full police uniform was injured while arresting a drunk patron. Noting that in making the arrest, the petitioner was performing the functions and duties of a police officer, the court further concluded that:
His action related as much to preserving the general public safety as it did to the benefit of [the restaurant]. The city had a sufficient continuing interest in what he was doing to make it liable for the injuries he received while he was doing it. * * * The city had a duty to preserve order and the use of police officers for off-duty jobs such as this merely shifted the financial burden to others.
The fact that the officer was paid by [the restaurant] and was instructed on the area to guard does not preclude Huard from being an employee of the city. In carrying out the special assignment Huard was still governed by police regulations and the evidence shows that police superiors checked on off-duty officers and disciplined them for poor performance. It appears that the procedures used in making the arrest in this case conformed to those used by officers on regular duty rather than those followed by private guards.
[113 N.H. at 83]
See also City of Hialeah v. Weber, 491 So.2d 1204 (Fla. Dist. Ct. App. 1986), holding that an off-duty police officer employed as a guard by a cocktail lounge, required to wear his police uniform and paid directly by the club, was compensable as a city employee when injured while apprehending ejected patrons who were slashing tires outside the premises. Cf. City of Louisville v. Brown, 707 S.W.2d 346 (Ky. Ct. App. 1986) (traffic control officer hired by school to control traffic for special event held not to be a municipal employee while performing that duty because traffic officer, unlike police officer, was not subject to a 24-hour duty rule).
We also conclude, as did the judge of compensation, that at the time of his injury petitioner was simultaneously employed by A & P. There can be no question that in performing the security duty which led to the arrest, petitioner was serving A & P's private interest as well as the public interest. He was, moreover, paid directly by A & P for performing those services, was subject to its general control and supervision, and was *459 placed by that employment in the specific position of risk that resulted in the injury. In sum, petitioner was injured because he was doing what A & P paid him to do, namely, to provide a police presence on its premises, a police presence which necessarily entailed the potential for an appropriate police response. It is thus proper for A & P to share, as his joint employer, in the burden resulting from his consequent actions as a police officer, albeit an off-duty police officer.
Although we are persuaded that the judge correctly characterized the relationship here as one of joint employment, we nevertheless are constrained to conclude that there was no legal basis for his implied indemnity theory. A virtually tautological consequence of the joint employment characterization is the obligation of each employer to share in the compensation burden. See, e.g., Cser v. Silverman, supra. Moreover, because the interests of each employer were being advanced, we see no basis for an indemnification of either by the other on equitable grounds. It is, to the contrary, equitable under these circumstances for the risk to be shared. See Conway v. Mister Softee, supra. Nevertheless, while there is no basis for an implied indemnity, joint employers are obviously free to negotiate an express contractual indemnity. Local police departments that undertake similar approved programs permitting and regulating the off-duty security-guard employment of their personnel by private employers might well consider requiring private employers to execute such indemnifications as a condition of participation. In any event, the point seems to be that departmental arrangements such as those obtaining in Fanwood are apparently perceived as serving a variety of public and private interests. It is fair for these interests to share in the consequent compensation burden.
The order below is modified, and we remand for further proceedings consistent herewith.
NOTES
[1] At the time petitioner was injured, A & P paid the officers $10 an hour. The Department's arrangement with A & P was thereafter terminated when A & P declined to accede to the Chief's request that the wage be raised to $15 an hour in order to achieve parity with general police salaries.
[2] As we noted in Alessio, a case directly addressing the applicability of the so-called firemen's rule to off-duty policemen, questions as to the status, rights and liabilities of an off-duty policeman must be determined in the context in which the inquiry arises. Thus, an off-duty police officer may be regarded as a working officer for compensation purposes but may not be so regarded for purposes of the firemen's rule. We further point out that, generally, the definition of employment is also dependent upon the context in which the question arises, and what may be characterized as employment for purposes of remedial social legislation may be otherwise characterized in other contexts. See, e.g., Marcus v. Eastern Agricultural Ass'n, Inc., 32 N.J. 460 (1960), rev'g on dissent 58 N.J. Super. 584, 596 (App.Div. 1959). What we say here consequently about this petitioner's joint employment is limited to the employment compensation context.