**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1088-16T3

JOHN DUTCHER,

    Plaintiff-Appellant,

v.

PEDRO PEDEIRO and BLACK
ROCK ENTERPRISES, LLC,

    Defendants-Respondents.

_____

Submitted October 25, 2017 — Decided November 22, 2017

Before Judges Nugent and Currier.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4321-15.

Stathis & Leonardis, LLC, attorneys for appellant (Marc D. Portlock, on the briefs).

O'Toole Fernandez Weiner Van Lieu, LLC, attorneys for respondents (Cindy M. Yu, on the brief).

PER CURIAM

    Plaintiff John Dutcher, a police officer, appeals from the summary judgment dismissal of his personal injury complaint and an order denying his motion for reconsideration. A vehicle struck

and injured plaintiff while he was directing traffic at a construction site. The contractor, defendant Black Rock Enterprises, LLC, owned the vehicle, and Black Rock's employee, defendant Pedro Pedeiro, was driving it when the accident occurred.[1] The trial court concluded plaintiff was a special employee of defendant and thus the Workers' Compensation Act's exclusive remedy barred his personal injury claim.

The summary judgment motion record supported the facts defendants set forth in their statement of material facts. Plaintiff did not respond to them, so the facts were deemed admitted. R. 4:46-2(b). The facts established an unrefuted prima facie case that plaintiff was defendant's special employee. We, therefore, affirm the summary judgment order and the order denying reconsideration.

Ten months after plaintiff commenced this personal injury action by filing a complaint, defendants moved for summary judgment. The discovery end date would not expire for another two months. Six days before defendants filed their motion, plaintiff had scheduled depositions of himself, Pedeiro, and a representative of Black Rock. The trial court decided defendants'

---

[1] All further references of singular "defendant" are to Black Rock only.

summary judgment motion before the depositions were taken and two days after the discovery end date.

Defendants filed with the summary judgment motion a statement of material facts supported by the pleadings and an affidavit of defendant's Managing Member. The facts establish that on the date of the accident, defendant was performing work under a contract with Middlesex County to provide milling services on county roads. Defendant hired police officers through the Township of Woodbridge to direct traffic during the time defendant was working on the roads. On the date of plaintiff's accident, defendant's Managing Member submitted a request to the Township for police officers to provide Extra Duty Services at the construction site located at the intersection of Woodbridge Center Drive and Plaza Drive. The Managing Member's request specified "exactly how many officers[] [and] patrol cars were needed, the time, location, and dates." In her request, the Managing Member further specified "exactly what services were required and what duties and responsibilities were expected to be performed[.]" In response, plaintiff "was assigned" to provide the requested Extra Duty Services at the intersection.

According to the Managing Member's affidavit, on the day of the accident, plaintiff "reported to the [s]ite, accepted instruction and direction, complied with [defendant's] rules, requirements, and policies, in the performance of work on behalf

A-1088-16T3

of [defendant]." The Managing Member further averred that on the date of plaintiff's accident, he "performed work on behalf of [defendant] at [defendant's] request, and under [defendant's] direction and control" from 8:00 a.m. until 4:00 p.m. During that time, plaintiff reported to defendant's supervisor. Further, defendant's foreman directed plaintiff as to where and how to direct traffic. According to the Managing Member, defendant "had sole control over the details of the work performed by [plaintiff,] . . . [and] would instruct [p]laintiff where and how to direct traffic, depending on the progress and status of the milling work[.]" The Managing Member asserted the Township "maintained no control, direction, or supervisory authority over [p]laintiff's work at the [s]ite." Further, "[defendant] had the power and authority to recall [plaintiff] for his services, or discontinue his services if they were no longer needed or were found by [defendant] to be unsatisfactory." Defendant admitted Pedeiro was the employee in the construction vehicle with a "bucket" that allegedly struck plaintiff.

Defendant reimbursed the Township for plaintiff's wages. The Managing Member averred in an affidavit the Township would send defendant invoices enumerating the hours plaintiff worked "along with the fees and hourly wages charged." Defendant would then pay the Township for plaintiff's services.

A-1088-16T3

In addition to the pleadings, defendants submitted a letter from the third party administrator for Central Jersey Joint Insurance Fund, the workers' compensation program of which the Township was a member. The third party administrator sent the letter to defendant's insurer. The letter stated that because plaintiff "was working on behalf of both the Township of Woodbridge and [defendant], [the] matter [was] a dual employment case of which [defendant was] responsible for 50% of all paid on the case."

On appeal, plaintiff makes substantive and procedural arguments. Substantively, plaintiff contends the facts defendant established did not support the trial court's finding that plaintiff was a special employee of defendant; and the court erroneously relied on defendants' misstatements concerning payment of plaintiff's workers' compensation benefits in making its determination. Plaintiff asserts the court made procedural errors by accepting defendants' "material statement of facts" rather than a "statement of material facts" required by Rule 4:46-2(a); by deciding the motion without insisting defendants provide the Township's position on plaintiff's employment classification; and by deciding the motion before discovery was complete.

Plaintiff's procedural arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We note, however, that plaintiff himself could have readily refuted

most of the material facts developed by defendants, particularly those directly bearing on who plaintiff reported to while working at the construction site, who supervised him, and who determined the circumstances under which he worked while directing traffic at the construction site.

Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). We "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)). A trial court's determination that a party is entitled to summary judgment as a matter of law is not entitled to any "special deference," and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) (citation omitted).

We review a trial court's denial of a motion for reconsideration under an abuse of discretion standard. Davis v. Devereux Found., 414 N.J. Super. 1, 17 (App. Div. 2010) (citing Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997)), aff'd in part and rev'd in part on other grounds, 209 N.J. 269, 277 (2012).

The New Jersey Workmen's Compensation Act, N.J.S.A. 34:15-1 to -69.3, provides employees with guaranteed recovery from their employers for workplace injuries, in exchange for a waiver of the right to sue their employer. N.J.S.A. 34:15-8. For purposes of workers' compensation, a worker may have two employers, "both of whom may be liable in compensation." Hanisko v. Billy Casper Golf Mgmt., 437 N.J. Super. 349, 360 (App. Div. 2014) (quoting Antheunisse v. Tiffany & Co., 229 N.J. Super. 399, 402 (App. Div. 1988), certif. denied, 115 N.J. 59 (1989)). In such situations, recovery of workers' compensation from one employer "bars the employee from maintaining a tort action against the other for the same injury." Ibid. (quoting Anthenuisse, supra, 229 N.J. Super. at 402).

A "special employment relationship" where the "special employer" is also responsible for worker's compensation exists "[w]hen a general employer lends an employee to a special employer," and "(a) [t]he employee has made a contract of hire, express or implied, with the special employer; (b) [t]he work being done is essentially that of the special employer; and (c) [t]he special employer has the right to control the details of the work." Blessing v. T. Shriver & Co., 94 N.J. Super. 426, 430 (App. Div. 1967) (quoting 1A Larson, Workmen's Compensation (1966), § 48.00, at 710 (now codified as 7 Lex K. Larson, Larson's

Workers' Compensation § 67.01 (2017) [hereinafter Larson])). In determining whether a special employee relationship has developed, courts also consider "whether the special employer (1) pays the lent employee's wages, and (2) has the power to hire, discharge or recall the employee." Ibid. (citation omitted).

When a court weighs these five factors to determine whether a special employment situation exists, "[n]o single factor is 'necessarily dispositive, and not all five must be satisfied in order for a special employment relationship to exist.'" Walrond v. Cnty. of Somerset, 382 N.J. Super. 227, 236 (App. Div. 2006) (quoting Marino v. Ind. Crating Co., 358 F.3d 241, 244 (3rd Cir. 2004)). "Generally, however, it is believed that the most significant factor is the third: whether the special employer had the right to control the special employee." Ibid. (citing Volb v. G.E. Capital Corp., 139 N.J. 110, 116 (1995)).

In the case before us, the undisputed facts on the motion record, deemed admitted by virtue of plaintiff's non-response, established the five factors. As to the first factor, though defendant contracted directly with the Township for the assignment of police officers for Extra Duty Services, "[t]he consent [for contracting] may be implied from the employee's acceptance of the special employer's control and direction" of the employee. Larson, supra, § 67.02[3]. Furthermore, where an "employee 'knew he would

be hired out to special employers, and accepted such employers just as he accepted the general employer . . . [the employee] intended to have two employers[.]'" Blessing, supra, 94 N.J. Super. at 434 (quoting Chickachop v. Manpower, Inc., 84 N.J. Super. 129, 137 (Law Div. 1964)). Here, plaintiff signed up for Extra Duty Services knowing the Township would hire him out to a second employer and would expect him to perform his duties for that employer. Therefore, as asserted by defendants, "[p]laintiff reported to the [s]ite in acceptance of the assignment as an Extra Duty Officer to perform work on behalf of [defendant]."

The second factor requires "the work being done is essentially that of the second employer." Larson, supra, § 67.01[1]. Defendants asserted "[p]laintiff directed traffic . . . for [defendant's] benefit." In that regard, when requesting officers from the Township, defendant had "specified exactly how many officers[] [and] patrol cars were needed, the time, location, and date[s]" they were needed, and "exactly what services were required and what duties and responsibilities were expected to be performe[d]." Plaintiff was directing traffic for the benefit of defendant as defendant performed milling services on county roads. The need for someone to direct traffic was directly related to defendant's work, and as such is essentially the work of defendant. See Domanoski v. Borough of Fanwood, 237 N.J. Super. 452, 453-54,

458 (App. Div. 1989) (determining an off-duty police officer assigned to work for a private business had dual employment with the private business and the Police Department, even though his assignment "was serving . . . private interest[s] as well as the public interest").

The third and perhaps most significant factor is that the special employer has the right to control the details of the work. Here, according to defendants' undisputed statement of facts, "[p]laintiff directed traffic in accordance with [defendant's] request, directions, and for [defendant's] benefit. During this assignment, [defendant] had sole control over the [p]laintiff with respect to directions, instructions, and ability to discontinue his services if they were no longer needed or were unsatisfactory." Upon arrival at the site, plaintiff would check in with defendant's supervisor. Defendant also "had a foreman on site who directed [plaintiff] as to where and how to direct traffic." The directions would "depend[] on the progress and status of the milling work [being] performed[.]" These facts adequately demonstrate control over plaintiff's work. While defendant may not have directly controlled exactly how plaintiff chose to direct traffic, defendant did have adequate control over when and where plaintiff performed his services.

A-1088-16T3

The next factor is whether the special employer "pays the lent employee's wages[.]" Blessing, supra, 94 N.J. Super. at 430. In this case, "[f]ollowing the completion of the assignment, [defendant] paid [p]laintiff's wages indirectly through payment of an invoice fee to the Township." Plaintiff argues this does not satisfy the requirement that the special employer pay the wages, because the special employer is paying the Township, who later pays plaintiff. However, the special employer does not need to directly pay the special employee for a special employment relationship to exist. See Kelly v. Geriatric & Med. Servs., Inc., 287 N.J. Super. 567, 577 (App. Div.) (finding direct payment would be more persuasive, but is not necessary for a finding of special employment), aff'd 147 N.J. 42 (1996). Particularly telling in this arrangement is the note at the bottom of the invoices from the Township to defendant: "Please pay on time. The officers do not get paid until I receive the payment from you."

Lastly, the special employer must have "the power to hire, discharge or recall the employee" in order for there to be a special employment relationship. Blessing, supra, 94 N.J. Super. at 430. Defendant had such authority as to its project. Defendant was able to "discontinue [plaintiff's] services if they were no longer needed or were unsatisfactory."

11

Based on defendants' undisputed statement of material facts, plaintiff was acting as a special employee of defendant at the time of the accident. Because plaintiff recovered worker's compensation benefits from the Township, plaintiff is barred from seeking further recovery through suit against defendant.

Plaintiff places much significance on defendant's alleged denial that he was an employee for purposes of workers' compensation. Plaintiff alleges defendant has denied the Township's claim for contribution in the workers' compensation action. This is not material to the action before us. As previously noted, in the context of this case, recovery of workers' compensation from one employer (the Township) bars the employee from maintaining a tort action against the other. Hanisko, supra, 437 N.J. Super. at 360.

The trial court properly granted defendants' summary judgment motion on the record before it. The trial court also properly denied plaintiff's motion for reconsideration. We agree with the trial court that plaintiff's reconsideration motion was an attempt to expand the summary judgment record and reargue the summary judgment motion. The trial court did not abuse its discretion by declining to consider on a reconsideration motion material that plaintiff could have submitted in opposition to the summary judgment motion.

A-1088-16T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1088-16T3