84 N.J. Super. 129 (1964)
201 A.2d 90
JOSEPH CHICKACHOP, SR., AND JOSEPH CHICKACHOP, JR., BY HIS GUARDIAN AD LITEM, JOSEPH CHICKACHOP, SR., PLAINTIFFS,
v.
MANPOWER, INC., A NEW JERSEY CORPORATION AND NEVIN McKAY T/A NEVIN McKAY & COMPANY, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
KREVITZ STEEL COMPANY, A PENNSYLVANIA CORPORATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 25, 1964.
*131 Mr. Rudolph J. Rossetti for plaintiffs (Messrs. Epstein & Fluharty, attorneys).
Mr. Arthur Montano for defendant third-party plaintiff Manpower, Inc. (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
Mr. Thomas A. Lunn for defendant and third-party plaintiff Nevin McKay t/a Nevin McKay & Company (Mr. Samuel P. Orlando, attorney).
Mr. John A. Fratto for third-party defendant (Messrs. Bleakly, Stockwell & Zink, attorneys).
PASCOE, J.C.C. (temporarily assigned).
This matter concerns two motions for summary judgment by the defendants Manpower, Inc. and Nevin McKay & Company. The grounds for such motions are that the infant plaintiff Joseph Chickachop, *132 Jr., through his guardian ad Litem Joseph Chickachop, Sr., has elected his remedy under the Workmen's Compensation Act of the State of New Jersey, N.J.S.A. 34:15-10. This remedy being his exclusive remedy, he therefore is barred from maintaining this action for common law liability.
A personal injury action was instituted by plaintiffs, the father suing per quod. Plaintiff minor had completed an application for employment with Manpower on June 24, 1961. In this application he lied concerning his age (he was 14 while telling Manpower he was 18) and special skills that he supposedly possessed. No proof of age was requested by the defendant Manpower and the child was employed at an hourly rate of $1. Manpower would assign him to a job on a day-to-day basis and his compensation would be received from Manpower.
On July 24, 1961 plaintiff minor was working at the Nevin McKay & Company plant. His task was to work with a polishing crew and required his loading and unloading steel plates to and from a large polishing machine. He had been so employed for several days prior to this date. On this day an accident occurred which resulted in steel plates falling on his right leg. The exact details of this incident are unclear because of contradictory statements under depositions made by several interested parties and witnesses.
However, for the purpose of this motion, the facts necessary to decide the legal issues are quite clear. While loading a truck owned by Krevitz Steel Company with steel furnished by Nevin McKay & Company through the use of a chain hoist, the box containing the steel fell and the minor plaintiff was injured. The steel plates were crated in wooden boxes, five inches tall and three by ten feet. The estimated weight was 1,000 pounds. The hoist had a pyramid-type apparatus with four hooks, and each hook was placed under the crate, on each corner of the far ends of the crate. These hooks were improperly placed by plaintiff and caused the box to fall and the steel to break through the lid onto his right leg.
A workmen's compensation claim was filed against Manpower alone and a hearing was held September 18, 1963. On *133 September 27, 1963 an order was issued by the judge of compensation. That order required defendant Manpower to provide plaintiff Joseph Chickachop, Jr., with plastic surgery, and to pay any temporary disability resulting from said surgical procedure. Pending completion of the plastic surgery the question of permanent disability, if any, and further temporary disability was to remain undetermined until a later date. Prior to the hearing defendant Manpower's insurance carrier had paid six weeks' temporary disability at $27 per week and 10% permanent disability of the right foot.
Several legal issues are now raised by this motion as a result of the workmen's compensation order.
Normally there would be no election of remedies by plaintiff in such an accident arising out of and in the course of his employment. But because of the age of Joseph Chickachop, Jr. a special statutory provision comes into play. N.J.S.A. 34:15-10 provides:
"In the employment of minors, this article shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor. If the injured employee at the time of the accident or compensable occupational disease is a minor under 14 years of age employed in violation of the labor law or a minor between 14 and 18 years of age employed, permitted or suffered to work without an employment certificate or special permit if required by law or at an occupation prohibited at the minor's age by law, a compensation or death benefit shall be payable to the employee or his dependents which shall be double the amount payable under the schedules provided in sections 34:15-12 and 34:15-13 of this Title.

* * * * * * * *
Nothing in this chapter contained shall deprive an infant under the age of 18 years of the right or rights now existing to recover damages in a common law or other appropriate action or proceeding for injuries received by reason of the negligence of his or her master. * * *"
At the time of this accident the minor was 14 years of age and was engaged in factory labor in violation of this statute and N.J.S.A. 34:2-21.2. The intent of the provisions of N.J.S.A. 34:15-10 was to put the injured minors in a more favorable position than other employees. A penalty *134 was imposed upon the employer in order to assure strict compliance with the labor laws. Houlihan v. Raymond, 49 N.J. Super. 85 (Law Div. 1958).
Plaintiff was thereby given additional rights without depriving him of existing rights. Thus an election of remedies was intended by our Legislature. A plaintiff minor may choose to bring an action for workmen's compensation or for common law tort. Terlingo v. Belz-Parr, Inc., 106 N.J.L. 221 (E. & A. 1929); Goetaski v. California Packing Corp., 19 N.J. Super. 460 (Law Div. 1952); Watson v. Stagg, 108 N.J.L. 444 (Sup. Ct. 1932); 1 Larson, Workmen's Compensation Law, pp. 704-08 (1952).
All parties are agreed upon the right of election, but there is a dispute as to what circumstances constitute such an election.
We must distinguish between a choice of inconsistent substantive rights afforded by law and a choice of inconsistent remedies in a narrower sense. In the former, the assertion of one right results in the loss of the other right; whereas in the latter case the mere commencing of a suit pursuing one remedy should not of itself result in the loss of the other remedy. Annotation, "Election of Remedies," 6 A.L.R.2d 10, 15 (1949).
Where you have a choice between two remedies and the rights are not inconsistent, then the satisfaction of one remedy bars the other remedy. A recovery in one proceeding is a satisfaction of remedy. Damato v. DeLucia, 110 N.J.L. 380 (E. & A. 1933); Balogh v. Ladanye, 59 N.J. Super. 132 (App. Div. 1960); 28 C.J.S., Election of Remedies, § 2, p. 1061 (1941).
It is the law of New Jersey that the acceptance of workmen's compensation payments and medical benefits voluntarily offered, and the mere filing of a claim petition, do not estop a suit in law. Volpe v. Hammersley Mfg. Co., 96 N.J.L. 489 (E. & A. 1921); Goetaski v. California Packing Corp., supra. But in the present case such medical benefits were paid by court order after a full hearing as to respondent *135 Manpower's liability, leaving only permanent disability to be finally resolved.
The judge of compensation ordered plastic surgery to be done, and Manpower was to pay the expenses and all temporary disability arising therefrom. R.S. 34:15-15 requires such a court order where the medical fees would exceed $50. The decision of the compensation judge was in the nature of a judgment and thus a satisfaction of a remedy.
While it is true that permanent disability has not been determined pending the results of the operation, and thus a final judgment has not been entered, the election has been made. Admittedly, plaintiff suffered a compensable accident  it was so stipulated in the compensation hearing. The employee is not required to wait until his permanent disability is fixed and evaluated before applying for relief. Medical attention or temporary compensation may be ordered by the Workmen's Compensation Division in accordance with R.S. 34:15-15. Voorhees v. Glenwal Co., Inc., 77 N.J. Super. 65 (App. Div. 1962).
"It is well established law by judicial construction of the whole compensation act that the furnishing of medical treatment is in the nature of compensation and constitutes a part `payment' thereof." Sa v. H.L. Harrison & Son, Inc., 38 N.J. 203 (1962).
The statute providing awards for medical and hospital service creates independent rights apart from the statute authorizing an award for permanent total disability. Fierro v. Public Service Coord. Transport, 44 N.J. Super. 73 (Cty. Ct. 1957).
It is the decision of this court that such an award of medical expenses for a plastic surgery operation and the temporary disability arising therefrom is a complete satisfaction of one remedy and acts as a bar to a suit at common law. While the remedy of permanent disability is still to be determined, this is an independent right arising from a common remedy of workmen's compensation and is merely a matter of continuing that portion of the case until the results of the operation can be measured.
*136 It is true that if such an operation were freely offered by defendant Manpower and accepted by plaintiffs, no election would result. But the facts show a complete trial and an order of the court, with the settlement of practically all the vital issues of the cause of action. Clearly, a choice has been made and cannot be avoided at this late stage of the case.
In the workmen's compensation petition, Manpower alone was made a defendant. Only in the suit at common law was Nevin McKay & Company involved as codefendant. Plaintiff now contends he may proceed on one remedy as to Manpower and a different remedy as to Nevin McKay & Company.
Unfortunately, the case law in New Jersey is very sparse indeed on the problem. Counsel for plaintiff cites Cser v. Silverman, 46 N.J. Super. 599 (Cty. Ct. 1957), affirmed 50 N.J. Super. 125 (App. Div. 1958), for the proposition that where a workman has two employers, then a workmen's compensation claim may be filed against both of them. Other New Jersey cases on this same vein are New Amsterdam Casualty Co. v. Popovich, 18 N.J. 218 (1955); Anderson v. Well-Built Homes of Central Jersey, Inc., 63 N.J. Super. 44 (Cty. Ct. 1960) affirmed 69 N.J. Super. 246 (App. Div. 1961); Knight v. Cohen, 53 N.J. Super. 122 (Cty. Ct. 1958), modified 56 N.J. Super. 516 (App. Div. 1959).
However, this does not solve the issues raised by counsel. No case in New Jersey controls or even points a commanding finger to the solution. However, other jurisdictions have had occasion to deal with the general problem.
"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
(a) The employee has made a contract of hire, express or implied, with the special employer;
(b) The work being done is essentially that of the special employer; and
(c) The special employer has the right to control the details of the work.
*137 When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation." 1 Larson, op. cit.; § 48.00, p. 710
This treatise on workmen's compensation goes on to deal with a situation where the general employer is more in the nature of an employment agency. Here the liability passes to the special employer. Ibid., § 48.23, p. 716. Such a situation is indeed the type of factual setting before this court in the present case. Manpower is an employment agency which supplies labor on a day-to-day basis. It supplied Nevin McKay & Company with Joseph Chickachop, Jr., as an unskilled factory worker. Chickachop was paid $1 an hour by Manpower.
The important criterion to be scrutinized is the requirement of a contract between the employee and the special employer. Certainly, the work being done was essentially that of the special employer, and said employer controlled the details of the work.
In St. Claire v. Minnesota Harbor Service, Inc., 211 F. Supp. 521 (D. Minn. 1962), a factual situation practically identical with ours was presented. Even the same general employer was involved. The plaintiff was an ordinary manual laborer who was sent by Manpower to clean defendant Minnesota Harbor Service Inc.'s barge. Plaintiff was told by the special employer to leave his cleaning task and pick up a barge cover. The cover fell and he was injured. The Minnesota Workmen's Compensation Act, M.S.A. § 176.01 et seq., barred his suit against the special employer as a third-party tortfeasor.
The importance of control by the special employer was stressed in the opinion. But the rule concerning a consent, either express or implied, to a contract with the special employer by the employee was followed. It was found that an implied consent existed and rightly so. Just as in this case, the employee knew he would be hired out to special employers, and accepted such employers just as he accepted the general employer.
*138 The case of Ishmael v. Henderson, 286 P.2d 265 (Okl. Sup. Ct. 1955), discusses the "loaned servant" doctrine and agrees with the proposition that men who are under the exclusive control of a special employer in the performance of work which is part of his business may at the same time be the employees of general and special employers and may look to both for compensation for injuries due to occupational hazards. See also Diaz v. Ulster Vegetable Growers Co-operative, Inc., 282 App. Div. 426, 123 N.Y.S.2d 321 (App. Div. 1954), affirmed 306 N.Y. 859, 118 N.E.2d 916 (Ct. App. 1954).
Counsel for plaintiff cites two Pennsylvania cases to bolster his argument: Quick v. Allegheny Const. Equipment Co., 361 Pa. 377, 65 A.2d 238 (Sup. Ct. 1949), and Bonanni v. Weston Hauling, Inc., 392 Pa. 248, 140 A.2d 591 (Sup. Ct. 1958). The issues in those cases were whether the employee could sue under a common law third party tort action against a "borrowing employer" or only under workmen's compensation. In both cases it was found to be a fact that there were not two employers but only one, the other party being a non-employer third party and thus the negligence suit was allowed. The consent of the employee to become an employee of the borrowing party was found to be missing, but both cases are so clearly distinguishable from our situation that they may be dismissed from our thinking.
Quick was a situation where a steam shovel fireman was injured when a shovel partly fell off a trailer as it was being loaded by employees of a corporation which just bought the equipment. The fireman had been ordered by his employer to help load the shovel on the trailer. To quote the court,
"* * * [T]here was no evidence that the plaintiff consented to become appellant's employee * * *." (65 A.2d, at p. 240)
Bonanni also involved a shovel operator. A trucking company which entered into a contract with plaintiff's employer to move the shovel to a new location requested employee to help. During this assistance plaintiff was injured.
*139 Both cases clearly involve factual settings different from an employment agency-special employer problem. Both cases clearly showed that the employee truly had only one employer and could not reasonably be held to consent to a new employer. But in our case, we have a situation of common occurrence to the employee. He intended to have two employers and all parties concerned felt such a condition existed.
While plaintiff was receiving his paycheck from Manpower the special employer, Nevin McKay & Company was paying Manpower a sum which included this wage and the fees of the employment agency. Such fees were used presumably to insure the employee for workmen's compensation. To disregard this and treat the special employer as a third-party tortfeasor would be unfair and against the intent of the Legislature.
In depositions, Nevin McKay, president of defendant Nevin McKay & Company, said:
"It was my understanding Manpower had guaranteed to save us harmless in the instance of any accidents to any of their employees and after this accident we asked them to put that in writing. We didn't have it in writing until after the accident and now we have it in writing."
Thus he believed he had an oral promise that part of the fee paid to Manpower was to be used for compensation insurance. To require him to be liable for common law tort instead of workmen's compensation would be wrong.
Since plaintiff has an election of workmen's compensation claim or a suit at law, the special employer is subject to a negligence suit. But it is going against the principles of election of remedies to allow the employee to choose one remedy as to the employer and an alternate remedy as to the second employer. There would be no real choosing of remedies. The employee would just receive the largest award obtained through the two methods. It is hard to visualize that this was intended when N.J.S.A. 34:15-10 was enacted. The Workmen's Compensation Law is to be interpreted so *140 that all doubts concerning the statute are to be made in favor of the employee because of the remedial nature of the act. But a reasonable manner should be followed in applying that principle and to find other than what we have stated above strikes against this court's concept of judicial interpretation of statutory construction.
The false representations of the minor plaintiff are not a defense to any workmen's compensation claim. E. Heller & Brothers v. Dillon, 96 N.J. Eq. 334 (E. & A. 1924); Volpe v. Hammersley Mfg. Co., 96 N.J.L. 489 (E. & A. 1921); Havey, Adm'r v. Erie Railroad Co., 87 N.J.L. 444 (Sup. Ct. 1915), reversed on other grounds, 88 N.J.L. 684 (E. & A. 1915).
For the reasons stated in this opinion, the motions for summary judgment by Manpower and Nevin McKay & Company are granted and the law action against them is dismissed with prejudice.