MEMORANDUM
 

 O’NEILL, Senior District Judge.
 

 Before the Court is the renewed motion for summary judgment of defendant McNeil-PPC.
 

 On October 2, 1992 plaintiff was injured while operating a Research Concept Maker machine manufactured by Personal Products Company in 1986. She brought this tort action against PPC’s corporate successor, McNeil-PPC, which was created when PPC merged with McNeil Consumer Products Company on January 1, 1989. After the merger PPC became an unincorporated division within McNeil-PPC. McNeil-PPC is a subsidiary of Johnson & Johnson.
 

 At the time of the injury plaintiff was working for Chicopee, a research enterprise of Johnson & Johnson. Plaintiff was initially hired in 1991 by temporary employment agency Manpower, Inc. to work for Chicopee which was at the time a separately incorporated Johnson & Johnson subsidiary. However, on July 1, 1992 three months before plaintiffs injury Chicopee merged into McNeil-PPC and relinquished its separate corporate status.
 

 Thus at the time of the injury McNeil-PPC was a corporate entity encompassing both the alleged tortfeasor PPC and the employer Chicopee. In fact the research work of both Chicopee and PPC was conducted within the same unincorporated division of McNeil-PPC, Worldwide Absorbent Products and Materials Research.
 

 Plaintiff received workers’ compensation benefits for her injury pursuant to the New Jersey Workers’ Compensation Act, N.J.S.A. 34:15-1
 
 et seq.
 

 [1]
 

 That Act “provides the exclusive remedy against the employer for a work-related injury sustained by an employee____ Fundamental to the Act is the premise that by accepting the benefits provided by its schedule of payments, the employee agrees to forsake a tort action against the employer.”
 
 Ramos v. Browning Ferris Indus. of South Jersey, Inc.,
 
 103 N. J. 177, 510 A.2d 1152, 1155 (1986). This exclusivity is:
 

 ‘designed to provide an expeditious and certain remedy for employees who sustain work injuries____ The employee surrenders his right to seek damages in an action at law in return for swift recovery independent of proof of fault. The employer gives up common law defenses to negligence suits and assumes an absolute liability to provide compensation; in return he is granted immunity from common law negligence suits by his employees.’
 

 Vega v. Standard Mach. Co.,
 
 290 N.J.Super. 434, 675 A.2d 1194, 1196-97 (App.Div.1996)
 
 *405
 
 (quoting
 
 Wilson v. Faull,
 
 27 N.J. 105, 141 A.2d 768, 774 (1958)).
 

 McNeil-PPC has moved for summary judgment on the grounds that it is entitled to this workers’ compensation tort immunity because at the time of the injury it was, through its unincorporated division Chicopee, plaintiffs employer. Plaintiff, while conceding that she was an employee of Chicopee,
 
 [2]
 
 asserts that she did not know that “Chicopee was involved in a merger or that Chicopee and McNeil-PPC and/or Personal Products had become part of the same corporation” and believed she “worked only for Chicopee.”
 
 [3]
 

 I must decide whether this alleged unawareness of her employer’s changed corporate identity raises a genuine issue of material fact as to whether McNeil-PPC became plaintiffs employer for the purposes of workers’ compensation tort immunity when Chicopee merged into and became an unincorporated part of McNeil-PPC.
 
 [4]
 

 Plaintiff asserts that this unawareness is material to McNeil’s status under the New Jersey special employment test which is used to determine whether an entity that borrows an employee’s services from a general employer such as Manpower is an employer for the purposes of workers’ compensation tort immunity. Under that test the borrowing entity becomes a special employer entitled to assert such immunity if the employee: (1) enters an express or implied contract to work for the borrower; (2) performs the borrower’s work; and (3) accepts the borrower’s right to control the details of the work.
 
 Volb v. G.E. Capital Corp.,
 
 139 N.J. 110, 651 A.2d 1002, 1004-05 (1995).
 
 [5]
 
 If the borrower is a special employer under these, criteria payment of workers’ compensation benefits by either the general or the special employer “bars the employee from maintaining a tort action against the other for the same injury.”
 
 Antheunisse v. Tiffany & Co., Inc.,
 
 229 N.J.Super. 399, 551 A.2d 1006, 1007 (App.Div.1988),
 
 certif. denied,
 
 115 N.J. 59, 556 A.2d 1206 (1989);
 
 Murin v. Frapaul Constr. Co.,
 
 240 N.J.Super. 600, 573 A.2d 989, 992 (App.Div.1990);
 
 Blessing v. T. Shriver & Co.,
 
 94 N.J.Super. 426, 228 A.2d 711 (App.Div.1967).
 
 [6]
 
 Plaintiff contends that her unawareness that her employer’s corporate identity had changed from Chicopee to McNeil-PPC raises a genuine issue of material fact as to whether she entered an implied employment contract with McNeil-PPC as required under the first
 
 Volb
 
 factor.
 

 Plaintiff is correct that in applying the special employment test New Jersey courts have required the employee’s consent to enter the special employment relationship. Those courts have not, however, considered whether the employee must know the corporate identity of the special employer for whom she agreed to work or whether her consent to work for a borrowing entity is tantamount to consent to work for the corporate entity of which the borrower is a part. Rather, the cases have analyzed only whether the employee agreed to work for an entity other than the general employer, an issue that is undisputed in this case.
 
 See Pacenti
 
 
 *406
 

 v. Hoffman-La Roche, Inc.,
 
 245 N.J.Super. 188, 584 A.2d 843, 845 (App.Div.1991) (inferring requisite consent from the employee’s reporting to borrower’s place of business and accepting its supervisors’ decisions, policies and training);
 
 Murin,
 
 573 A.2d at 991-94 (holding that existence of “deliberate and informed consent” turns on “whether it is understood between [the employee] and his employers that he is to remain in the allegiance of the first [employer] ... or is to be employed in the business and subject to the direction of the temporary employer”);
 
 Chickachop v. Manpower, Inc.,
 
 84 N.J.Super. 129, 201 A.2d 90, 95, 96 (Law Div.1964) (finding sufficient consent because employee “knew he would be hired out to special employers, and accepted such employers just as he accepted the general employer” and “intended to have two employers”). The cases applying the implied contract prong of the special employment test thus do not address the issue that arises in this case where plaintiff concededly agreed to work for a borrowing entity other than her general employer Manpower but allegedly did not know the borrowing entity had become an unincorporated part of MeNeil-PPC at the time of her injury.
 

 New Jersey courts have, however, explicitly rejected the notion that an employee’s subjective unawareness or misunderstanding of an employer’s corporate identity can deprive the employer of the tort immunity that attaches once workers’ compensation benefits have been paid. In
 
 Taylor v. Pfaudler Sybron Corp.,
 
 150 N.J.Super. 48, 374 A.2d 1222 (App.Div.),
 
 certif. denied,
 
 75 N.J. 20, 379 A.2d 251 (1977), the plaintiff after receiving workers’ compensation benefits brought a tort action against Sybron, the corporation whose unincorporated division Ionac employed him.
 
 [7]
 
 He asserted that workers’ compensation tort immunity did not bar the action against Sybron because he believed Ionac was his employer and “any relationship with Sybron was never brought to his attention.”
 
 Id.
 
 374 A.2d at 1223.
 

 The Appellate Division rejected the plaintiffs contention that the defendant corporation’s tort immunity depended on whether the plaintiff knew the defendant was his employer. Adopting an objective test of whether the corporate entity “called upon to respond in damages” was “in fact the employer of plaintiff,” the
 
 Taylor
 
 court held that “[s]o long as the employer and the alleged tortfeasor are one, plaintiff is limited to the compensation recovered under the Workers’ Compensation Act.”
 
 Id.
 
 374 A.2d at 1224 (affirming summary judgment for defendant on immunity grounds despite plaintiff’s unawareness of any employment relationship with defendant).
 
 [8]
 

 
 *407
 
 As the court explained “[t]he mere use of divisions or departments ... does not warrant a deviation from the express legislative policy” of a “single recovery under the Workers’ Compensation Act.”
 
 Id.
 
 Because in this case McNeil-PPC was at the time of the injury both “in fact the employer of plaintiff’ through one of its unincorporated divisions and “the corporate entity called upon to respond in damages” for the alleged tort of another such division plaintiffs subjective belief that McNeil-PPC was not her employer cannot circumvent the tort immunity that attaches as the result of payment of workers’ compensation benefits.
 
 [9]
 

 The New Jersey Supreme Court’s recent
 
 Volb
 
 decision affirms the emphasis on corporate structure to determine whether a defendant is entitled to workers’ compensation tort immunity. In
 
 Volb
 
 an employee of T.D.E. accidentally killed Mr. Volb who was an employee of J.H. Reid working at the same construction site. T.D.E. and J.H. Reid were separately incorporated but closely affiliated construction companies owned by the same principals.
 
 See id.,
 
 651 A.2d at 1003-04.
 
 [10]
 
 Despite the close relationship between Volb’s employer and T.D.E. the court refused to extend workers’ compensation immunity to T.D.E. because “the separate corporate identity of affiliated corporations should not be disregarded.”
 
 Id.
 
 651 A.2d at 1008. As the court explained,
 

 ‘[e]ach corporation is a separate entity. The respective incorporators ... while entitled to the benefits that flow from incorporation, must also accept the burdens that flow from the use of the corporate structure. One of the burdens to be accepted is that a corporation may not share the immunity [the New Jersey Workers’ Compensation Act] provides to a sister subsidiary corporation.’
 

 Id.
 
 at 1010 (quoting
 
 Vernon v. Supermarket Seru. Corp.,
 
 250 N.J.Super. 8, 593 A.2d 345, 346 (App.Div.1991)). Under this corporate entity approach workers’ compensation tort immunity extends throughout the “single corporate entity” in which the plaintiff was employed when injured regardless of whether the plaintiff believed that an unincorporated part of that entity was the employer.
 
 Taylor,
 
 374 A.2d at 1223.
 

 Thus just as
 
 Taylor
 
 refused to disregard the fact that the
 
 employer
 
 and tortfeasor, while distinct enterprises, were but divisions of a sole corporate entity and just as
 
 Volb
 
 refused to disregard the fact that the employer and the tortfeasor, while closely affiliated, were separate corporate entities, so must I refuse to disregard the properly effected mergers that have made the employer and the tortfeasor in the instant case unincorporated divisions of the same corporate entity, McNeil-PPC.
 

 Defendant McNeil-PPC was at the time of the injury and is now the sole corporate entity responsible for both the tort liabilities of PPC and the workers’ compensa
 
 *408
 
 tion liabilities of Chicopee.
 
 [11]
 
 Accordingly this action arising out of plaintiffs work-related injury cannot be viewed as a claim against a third-party tortfeasor; as a matter of economic reality it demands a second recovery from the employer contrary to the statutory policy of a “single recovery under the Workers’ Compensation Act.”
 
 Id.
 
 374 A.2d at 1223-24. Under this corporate entity approach an employment relationship with an unincorporated part of a corporation gives rise to an employment relationship with the corporate entity for the purposes of workers’ compensation tort immunity regardless of the employee’s awareness thereof. Consequently issues regarding plaintiffs unawareness that Chicopee had become an unincorporated part of McNeil-PPC, even if genuine, are not material and do not preclude entry of summary judgment on the special employment issue.
 

 McNeil-PPC’s status as an employer at the time of the injury does not, however, end the analysis of its entitlement to workers’ compensation tort immunity. Some jurisdictions recognize an exception to tort immunity that otherwise attaches when an employer acts in two capacities and assumes duties to the employee independent of the employment relationship.
 
 See Billy v. Consolidated Mach. Tool Corp.,
 
 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980).
 

 One New Jersey trial court applied the dual capacity doctrine and allowed it to abrogate an employer’s tort immunity in a suit for the negligence of “formerly separate corporations” that had merged into the employer before the injury occurred.
 
 Petrocco v. AT & T Teletype, Inc.,
 
 273 N.J.Super. 613, 642 A.2d 1072 (Law Div.1994). Citing
 
 Billy
 
 the eourt concluded that the “exclusive remedy provision of the Workers’ Compensation Act was not intended to immunize a third-party manufacturer” from tort liability merely because it had merged with the employer.
 
 Id.
 
 (citing
 
 Billy,
 
 432 N.Y.S.2d at 882-83, 412 N.E.2d at 938).
 
 [12]
 

 I am not persuaded that the New Jersey Supreme Court would adopt this approach.
 
 [13]
 
 Contrary to statutes expressly limiting employers’ liability for work-related injuries the dual capacity cases hold employers liable for the torts of defunct “third-party manufacturers” that had ceased to be third parties and had become unincorporated parts of the employer long before the injury occurred and indeed before the employment relationship even began.
 
 [14]
 
 Apart from its equitable con
 
 *409
 
 cern that merging tortfeasors remain liable,
 
 Petrocco
 
 provides no rationale for disregarding the employer’s corporate structure that existed during the employment and the injury or for looking instead to the corporate structure that existed when the alleged negligent manufacturing occurred.
 

 This disregard of duly effected changes in corporate structure is inimical to the New Jersey Supreme Court’s admonition in
 
 Volb
 
 that for the purposes of workers’ compensation tort immunity incorporators are “ ‘entitled to the benefits’ ” as well as subject to the burdens of their chosen corporate structure. 651 A.2d at 1010 (quoting
 
 Vernon,
 
 593 A2d at 346). It also ignores the economic reality that because of the merger the “corporate entity called upon to respond in damages” for the tort action is the same corporate entity that is “in fact the employer” bearing financial responsibility for workers’ compensation coverage. Thus the dual capacity approach, holding the employer liable for two forms of recovery for the same work-related injury, is contrary to the “express legislative policy” of a “single recovery under the Workers’ Compensation Act.”
 
 Taylor,
 
 374 A.2d at 1224.
 

 The dual capacity doctrine is a judicially-created exception to the immunity statutorily conferred on employers as the quid pro quo for their absolute liability for work-related injuries. New Jersey appellate courts have twice rejected the doctrine as counter to the policies underlying New Jersey’s workers’ compensation scheme. Both courts expressed a reluctance to undermine statutorily mandated exclusivity provisions.
 
 See DeFigueiredo v. United States Metals Refining Co.,
 
 235 N.J.Super. 407, 563 A.2d 50 (App. Div.1989);
 
 Doe v. Saint Michael’s Medical Center,
 
 184 N.J.Super. 1, 445 A.2d 40 (App. Div.1982). In applying the dual capacity doctrine the
 
 Petrocco
 
 court did not attempt to reconcile it with
 
 Taylor
 
 or any other appellate decisions interpreting the exclusivity provisions of the New Jersey Workers’ Compensation Act.
 

 The New Jersey Supreme Court has warned, “[a]s tempting as it may be in a given case to temper the exclusive-remedy provisions of the Workers’ Compensation Act” courts must “defer to the balance of interests as struck by the Legislature. The unmistakable intention of the Legislature was that the sole liability of an employer for a work-related injury of an employee was that provided in the Act.”
 
 Ramos v. Browning Ferris Indus. of South Jersey, Inc.,
 
 103 N.J. 177, 510 A.2d 1152, 1155 (1986);
 
 accord Boyle v. Breme,
 
 187 N.J.Super. 129, 453 A.2d 1335, 1337 (App.Div.1982) (rejecting dual capacity doctrine because “we should not threaten the integrity” of the workers’ compensation scheme or the “accepted proposition that an employee surrenders other claims for the certainty of the exclusive workers’ compensation remedy” but rather should leave “any adjustment in the gears ... to the Legislature”).
 
 [15]
 

 Sound reasons support this vigilant protection of the statutorily-provided tort immunity. Once employers must defend tort suits in addition to paying workers’ compensation for work-related injuries their liability is no longer “limited and determinate” in return for the employee’s remedy being “expeditious and certain;” insurance and litigation costs associated with workplace injuries rise and the workers’ compensation scheme loses the fairness and efficiency that make it beneficial for both employers and employees.
 
 Wilson v. Faull,
 
 27 N.J. 105, 141 A.2d 768, 774 (1958);
 
 Arcell v. Ashland Chem. Co.,
 
 152 N.J.Super. 471, 378 A.2d 53 (Law Div.1977).
 

 I recognize that the Law Division in
 
 Petrocco
 
 when confronted with facts closely analogous to those before me adopted New York’s dual capacity exception to workers’
 
 *410
 
 compensation tort immunity. It did not, however, analyze whether New York’s formulation of the dual capacity doctrine comported with the New Jersey Workers’ Compensation Act as interpreted by the New Jersey courts.
 
 [16]
 

 In light of the New Jersey courts’ emphasis on corporate structure at the time of the injury, on the economic reality of whether the party answerable for tort damages is in fact the same corporate entity as the employer and on preserving the statutory equilibrium embodied in the exclusivity provisions, I find
 
 Petrocco
 
 and its application of the dual capacity doctrine inconsistent with established principles of New Jersey workers’ compensation law. I therefore conclude that MeNeil-PPC is entitled to summary judgment on the grounds that as plaintiffs employer at the time of the injury it is entitled to workers’ compensation tort immunity.
 
 [17]
 

 ORDER
 

 AND NOW this 9 day of September, 1996 upon consideration of the pleadings and record herein and the Report and Recommendation of the Magistrate Judge it is hereby ORDERED that defendant’s renewed motion for summary judgment is GRANTED and judgment is entered for defendant and against plaintiff.
 

 [1]
 

 . The parties agree that New Jersey law governs.
 

 [2]
 

 . See Plaintiff’s Mem. at 16-17.
 

 [3]
 

 . Plaintiff’s Exhibit D.
 

 [4]
 

 . Because for reasons explained below I find plaintiff's unawareness of Chicopee's corporate identity immaterial I need not decide whether factual issues in that regard are genuine. I note, however, that plaintiff’s own testimony reveals that she knew of changes in corporate structure involving Chicopee and WAPMR and knew that Chicopee’s and PPC’s work was interrelated.
 
 See
 
 Holliday Deposition at 100-101, 106, 163-170, 189, 193-94; Cook Affidavit & Exhibit A thereto.
 

 [5]
 

 . The right to control the borrowed employee’s work is the most important factor.
 
 See id.
 
 Some New Jersey courts also consider; (1) who pays the borrowed employee's wages; and (2) whether the borrowing employer has the power to hire and fire the employee.
 
 See Kelly v. Geriatric & Medical Serv., Inc.,
 
 287 N.J.Super. 567, 671 A.2d 631, 634 (App.Div.1996);
 
 Blessing v. T. Shriver & Co.,
 
 94 N.J.Super. 426, 228 A.2d 711, 713 (App.Div.1967).
 

 [6]
 

 . It is thus immaterial to the analysis of McNeil-PPC's tort immunity that pursuant to a contract with Chicopee Manpower paid plaintiff’s workers’ compensation benefits. The logic of this rule is clear where as here the special employer pays the general employer fees that presumably include workers’ compensation coverage premiums.
 
 See Antheunisse,
 
 551 A.2d at 1008-09;
 
 Chickachop v. Manpower, Inc.,
 
 84 N.J.Super. 129, 201 A.2d 90, 96 (Law Div.1964).
 

 [7]
 

 . I am unable to agree with the Magistrate Judge's conclusion that
 
 Taylor
 
 is distinguishable because there the employment relationship was undisputed.
 
 See
 
 July, 1994 Report & Recommendation at n. 11. Rather, I find
 
 Taylor
 
 closely analogous to the instant case because in each case the plaintiff acknowledged an employment relationship with an unincorporated part of the defendant corporation but denied that this gave rise to an employment relationship with the corporate entity absent the plaintiff’s awareness of and consent to a relationship with that corporation. The fact that in the instant case the unincorporated entity is a special rather a general employer does not alter the analysis because both general and special employers are entitled to tort immunity once workers' compensation has been paid.
 
 See Antheunisse,
 
 551 A.2d at 1007.
 

 Nor do I find
 
 Taylor
 
 distinguishable because there was no change in corporate form in that case.
 
 Taylor
 
 addresses the precise issue before me: whether an employment relationship with an unincorporated entity within a corporation gives rise to an employment relationship with the corporation for the purposes of workers’ compensation tort immunity despite the employee’s belief that the unincorporated entity is the employer and unawareness of any relationship with the corporation. I find no support for plaintiff’s argument in
 
 Santos v. Standard Havens, Inc.,
 
 225 N.J.Super. 16, 541 A.2d 708 (App.Div. 1988) (holding that plaintiff's decedent became special employee of separately incorporated subsidiary after general employer parent corporation lent his services to subsidiary under circumstances that satisfied special employment factors).
 

 [8]
 

 . This New Jersey precedent emphasizing actual corporate structure over the plaintiff's subjective understanding thereof precludes me from following cases from other jurisdictions that allow tort suits against entities within the same corporate entity as the employer if the employee believed the defendant was distinct from his employer.
 
 See, e.g., Erickson v. Goodell Oil Co.,
 
 15 Mich. App. 398, 166 N.W.2d 648 (1968),
 
 rev'd on other grounds,
 
 384 Mich. 207, 180 N.W.2d 798 (1970) (permitting tort suit despite receipt of workers’ compensation benefits because plaintiff did not
 
 *407
 
 know alleged tortfeasor had merged with his employer and believed it was a third party outside the employment relationship). Because the
 
 Erickson
 
 approach ignores the "economic reality” that a recovery of tort damages from a perceived third-party tortfeasor would actually be a second recovery from an employer where the tortfeasor and the employer were within the same corporate entity,
 
 Erickson,
 
 166 N.W.2d at 650 (Elliott, J., dissenting). I therefore find
 
 Erickson
 
 inconsistent with
 
 Taylor’s
 
 objective approach to determining whether the defendant was "in fact” both "the employer of plaintiff” through one of its unincorporated divisions and "the corporate entily called upon to respond in damages” for the alleged tort of another such division.
 
 Taylor,
 
 374 A.2d at 1224.
 

 Addison v. Dixie Chevrolet Co.,
 
 246 S.C. 86, 142 S.E.2d 442 (S.C.1965) and
 
 Holloway v. G.O. Cooley & Sons,
 
 208 S.C. 234, 37 S.E.2d 666 (1946), are unpersuasive because they did not address tort immunity but rather analyzed a former employer’s continued liability for workers’ compensation benefits after selling a business.
 

 [9]
 

 . In the instant case PPC, the alleged tortfeasor, and Chicopee, the entily plaintiff believed was her special employer, were not even separate unincorporated divisions as in
 
 Taylor.
 
 Both were part of the WAPMR division of McNeil-PPC. This close relationship further underscores the fact that the alleged tortfeasor was not a separate economic entity from the employer and that this tort action demands a second recovery from an employer for the same work-related injury contrary to the clear legislative policy of a single recovery.
 

 [10]
 

 . Because each company hired workers for the other the court inferred that union considerations "dictated the use of separate corporate entities.” 651 A.2d at 1004.
 

 [11]
 

 . Regarding Chicopee's liability for the workers’ compensation benefits see
 
 supra
 
 note 6 and accompanying text.
 

 [12]
 

 . The relevant portion of
 
 Billy
 
 held that suits against an employer as the “successor to the liabilities" of a formerly separate third-party tortfeasor stand on a "different footing” from traditional dual capacity claims because they are "essentially an attempt to recover from third-party manufacturers through a suit against their corporate successor.” Since the former third parties would have had no basis for invoking tort immunity, the
 
 Billy
 
 court reasoned, it would be “grossly inequitable” to permit the employer to "avoid its assumed obligations solely because the injured party was coincidentally an employee” when those obligations “arose not out of the employment relation but out of an independent business transaction." 432 N.Y.S.2d at 885, 412 N.E.2d at 940. This holding elicited a vigorous dissent on the grounds that it ignored principles of corporate law that endow successor corporations not only with their own statutory immunities as employers but also with “the rights, privileges [and] immunities” of corporations they had absorbed through mergers.
 
 Id.
 
 at 886-87, 412 N.E.2d at 942 (Meyer, J., dissenting). Indeed the
 
 Billy
 
 majority itself noted that if based on "illusoiy distinctions” between the employer’s functions the doctrine is "fundamentally unsound” and "seriously undermin[es] the salutary ... purposes” of the workers' compensation scheme.
 
 Id.
 
 at 883-84, 412 N.E.2d at 939.
 

 [13]
 

 . As a federal court sitting in diversity this Court must predict how the highest state court would rule.
 
 See Clark
 
 v.
 
 Modem Group Ltd.,
 
 9 F.3d 321, 326-27 (3d Cir.1993).
 

 [14]
 

 . I note that in this case not only the alleged tortfeasor PPC but also the employer Chicopee became part of McNeil-PPC through a merger. However, under
 
 Taylor
 
 plaintiff's employment with Chicopee made plaintiff an employee of McNeil-PPC. Therefore I need only decide whether PPC’s alleged torts should be considered those of a third party based on PPC's former third-party status or those of the employer based on McNeil-PPC’s assumption of PPC's liabilities when it absorbed PPC in 1989. I find the latter view more persuasive in part because McNeil-PPC assumed PPC’s liabilities before it became plaintiff's employer in July, 1992 — indeed before Chicopee became plaintiff's employer in 1991— and well before plaintiff’s injury gave rise to her tort claim in October, 1992.
 

 [15]
 

 . Indeed the New Jersey Supreme Court in
 
 Volb
 
 recognized that even broader immunily extending across separate corporations within the same enterprise would "be consistent with the underlying objectives of workers’ compensation legislation,” 651 A.2d at 1010, but because the "facades created by incorporation cannot be transgressed” and because the "Legislature is at liberty” to alter the scope of immunity the
 
 Volb
 
 court did not extend immunity beyond the corporate entity in which the plaintiff was employed.
 
 Id.
 
 This further demonstrates the New Jersey Supreme Court’s reluctance to narrow tort immunity to hold employers hable for the torts of unincorporated entities within the employer corporation based on the past separate identity of the unincorporated division.
 

 [16]
 

 . Where as here the state supreme court has not decided the precise issue at hand "a federal tribunal should be careful to avoid the danger of giving a state court decision a more binding effect than would a court of that state____ Rather, relevant state precedents must be scrutinized with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends they evince."
 
 McKenna v. Ortho Pharmaceutical Corp.,
 
 622 F.2d 657, 662-63 (3d Cir.),
 
 cert. denied,
 
 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). State trial court decisions are “not controlling,"
 
 King v. Order of United Commercial Travelers of America,
 
 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948), and need not be followed when their reasoning contradicts statutory intent and would not be followed by the state supreme court.
 
 McGeshick v. Choucair,
 
 9 F.3d 1229, 1234 (7th Cir. 1993),
 
 cert.
 
 denied,U.S. -, 116 S.Ct. 1834, 134 L.Ed.2d 937 (1996). In ascertaining how the state Supreme Court would rule state appellate decisions on matters "closely related but not identical ... [are] more helpful than more closely related opinions by lower state courts."
 
 Gruber v. Owens-Illinois Inc.,
 
 899 F.2d 1366, 1370 n. 5 (3d Cir. 1990).
 

 [17]
 

 . As to plaintiff’s breach of warranty and strict liability claims defendant is entitled to summary judgment on the additional grounds that defendant was not a merchant with respect to the type of goods that injured plaintiff and did not place such products in the stream of commerce.